STOULIG, Judge.
Plaintiff, Peter J. Rebaudo, brought this suit against his employer’s compensation carrier claiming that he was totally and permanently disabled as a result of an accident which occurred within the course and scope of his employment, and that he is therefore entitled to workmen’s compensation at the rate of $35 a week for 400 weeks. After a trial of the matter, the district court held that plaintiff had failed to prove his claimed disability by a preponderance of the evidence and dismissed his suit, subsequent to which this devolutive appeal was taken.
The record reflects that the plaintiff, an attendant in a service station owned by his brother Joseph Rebaudo, was injured on August 23, 1965, during an attempt to remove one of the bottom cartons of an 8-foot stack of cases, each unit containing 24 oil cans together weighing a total of 60 pounds. This effort caused the top cases to fall, one of them striking him at a point on his back several inches below the collar line, and another hitting him somewhat lower but on the upper area of the spine. He was knocked to the floor and came to rest on his stomach.
Despite his injury, plaintiff continued to work at the service station and missed no *469 work until it was sold by his brother in January of 1966, at which time he took a job as an “inspector” for the Sewerage and Water Board of New Orleans. Plaintiff was still employed in this position at the date of trial in February of 1971 and testified that he had missed no time from work since taking this job.
Stated simply, plaintiffs position is that as a result of the accident he sustained injuries which prevented him from performing the duties of a service station attendant, his occupation of 25 years; that his inability to carry on in this capacity prompted his brother’s decision to sell the station, resulting in his taking the lower paying but physically less demanding job of “inspector” for the Sewerage and Water Board.
Since the factual issue on which this case turns is medical it is necessary that we review the testimony of the physicians who appeared at the trial of this matter.
Dr. Joseph Weilbaecher, a cardiologist, who was the first doctor plaintiff consulted, examined Rebaudo on August 27, 1965. His report reflects that Rebaudo complained of persistent pain and soreness in the top of both shoulders and both scapular areas, radiating as far as the deltoid area. A chest X ray which was made showed no rib fractures of other coincidental trauma. On September 6 he was again seen by Dr. Weilbaecher, who, due to the patient’s persistent complaints of pain, referred him to Dr. Irvin Cahen.
Dr. Cahen treated Rebaudo from his first visit on September 22, 1965, until April of the following year. His report indicated that although the patient complained of pain in the area of the upper dorsal spine (the area below the neck in the region of- the rib cage between the shoulder blades) an examination revealed that his alignment relative to the vertebral column was within normal appearance, there was no scoliosis and no muscle spasm of the neck or shoulder zone. In view of his examination and the patient’s clinical history, Dr. Cahen assumed that the impact of the cases across Rebaudo’s vertebral zone had resulted in a “contusive effect” and suggested treatment by muscle relaxant drugs and sedatives. Although the patient’s complaints of pain persisted, including cervical tenderness which he attributed to activation of degenerative arthritis (specifically ruling out a ruptured inter-vertebral disc in the cervical area), Dr. Cahen stated:
“Insofar as the patient’s employability is concerned examiner believes he is capable of moderate physical activity such as previously performed * * * [although he would be] limited in functions requiring heavy lifting or physical stress utilizing extension of the extremities above shoulder level.”
Plaintiff Rebaudo was examined by Dr. Homer D. Kirgis, a neurosurgeon, on August 21, 1968, who was of the opinion that the patient had a ruptured interverte-bral disc at the fifth cervical interspace, though he could not state whether or not this condition was a result of the accident. He classified plaintiff’s pain as relativély minor at the time of his examination and saw no contraindication to his working in a service station including the lifting of heavy objects, though he did qualify it to the extent that he thought it would not be wise for him to lift heavy objects above his head. Dr. Kirgis stated:
“* * * [L]ots of people have these injured discs and I’m sure work in service stations, so I would have seen — at the time that I saw him I would have seen no contraindication to him going ahead and working in a service station.”
Dr. George R. Cary, an orthopedic surgeon, examined Rebaudo at defendant’s request on April 19, 1967, and again on February 12, 1970. The results of these examinations were generally negative: No evidence of muscle spasm was found about the neck, trapezial area or upper shoulders; the patient exhibited full range of motion of the cervical spine in all phases of fixation. Dr. Cary did, however, find tender *470 ness in the upper thoracic region though none was found in the cervical area. Although he found no evidence of a fractured disc, X rays taken by him did show a degenerative arthritic process, which he concluded predated the accident. He further concluded that the arthritic condition had not been aggravated by the accident.
It was Dr. Cary’s opinion that the patient had received a direct contusion to the lower cervical and upper thoracic spine, there being no remaining objective physical findings. With regard to the plaintiff’s physical capabilities Dr. Cary stated:
“It is the feeling of the examiner at this time that the patient is capable of functioning in a reasonable work capacity as that previously performed as a service station attendant.”
Rebaudo was also examined by Dr. Richard Levy, a neurologist, on October 16, 1968. Dr. Levy noted that the patient was complaining at the time of pain in the neck as well as pain between the shoulder blades. However, he found no paraspinal muscle spasm in the neck, no restriction of motion in the neck, no signs of a ruptured disc in his neck, no muscle wasting in his shoulders, arms or hands, and concluded that Mr. Rebaudo had no neurological disability or neurological basis for his symptoms.
The sole medical expert who lends credence to plaintiff’s claim that he is totally and permanently disabled is Dr. Byron Un-Kauf, an orthopedist who saw plaintiff over a period of over 4 years beginning in August of 1966, almost a year after the accident. In his initial examinations, Dr. UnKauf found no evidence of a ruptured disc and concluded that the plaintiff had a mild residual of the cervical spine strain as a conclusion of the alleged accident. He felt the slight residuals present would improve with the due course of time. However the patient’s pain persisted and, feeling that perhaps Mr. Rebaudo had more trouble with his neck than initial examinations indicated, Dr. UnKauf recommended a cervical myelogram. However, the patient was fearful of the test and it was never undergone.
At the time of trial Dr. UnKauf felt the plaintiff had a permanent disability in the vicinity of 10 to 15 percent of the body as a result of the alleged injury and was not fit to continue working in a gas station, though he felt he could do a light sedentary job.
Plaintiff strenuously argues that the testimony of Dr. UnKauf presents an irreconcilable medical conflict regarding his disability and that in such a case his testimony should be given more weight than the other experts since Dr. UnKauf had treated the patient over a- longer period of time. Further, he urges that in the event of irreconcilable medical conflict more weight should have been accorded his testimony and the corroborative testimony of his wife Irma Rebaudo.
It is axiomatic that the findings of the trial court on questions of fact may be reversed only for manifest error. The trial court has great discretion in its determination of facts and its opinion is to be accorded great weight, especially in its findings of credibility of witnesses. Ricks v. Associated Indemnity Corporation, 242 So.2d 346 (La.App. 4th Cir. 1970); Gay v. Travelers Insurance Company, 234 So.2d 241 (La.App.2d Cir. 1970); Readco Industries, Inc. v. Myrmax Specialties, Inc., 236 So.2d 573 (La.App.1st Cir. 1970) (writ refused, 265 La. 865, 239 So.2d 362); Bagley v. Commercial Union Ins. Co. of New York, 216 So.2d 102 (La.App.lst Cir. 1968).
While it is true that Dr. UnKauf saw plaintiff a total of 12 times in 4 years [1] we do not find his testimony so persuasive that it manifestly outweighs that of the *471 other physicians who testified. Furthermore, it is noteworthy that the testimony of Dr. Cahen, who was plaintiffs initial treating physician and who saw him 7 times in the 8 months following the accident was not sought by Rebaudo, but rather testified at the calling of counsel for defendant.
Nor can we say that the trial court was manifestly in error in failing to accord greater weight to the testimony of plaintiff and his corroborating witnesses. The trial court was in a position to observe the witnesses (except for Joseph Rebaudo, whose deposition was used) as they testified, and is far better able to determine their credibility and assess the weight to be accorded their testimony than is this tribunal.
For the foregoing reasons the judgment of the district court dismissing plaintiff’s suit is affirmed, costs to be borne by the appellant.
Affirmed.

. August 8, 1966; December 15, 1966; January 24, 1967; February 3, 24, 1967; March 31, 1967; May 16, 1967; February 16, 1968; April 24, 1968; October 2, 1968; May 20, 1969 and November 6, 1970.