303 So.2d 192 (1974)
Helen Montecino, widow of Truly MAY, Sr.
v.
FINEST FOODS, INC., et al.
No. 6428.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1974.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, for defendants-appellants.
Wallace C. Quinn, New Orleans, for plaintiff-appellee.
Before LEMMON, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
Defendants appeal from a judgment awarding plaintiff benefits under the Workmen's Compensation law for total and permanent disability growing out of an accident which occurred on September 10, 1968, while plaintiff was on the job as a waitress in a restaurant.
Defendants' position is that the plaintiff failed to prove any connection between the accident and her condition at the time of the trial in 1973.
Plaintiff had been employed by defendant for many years before the date of her last accident which occurred when she was struck from behind by a tray full of dishes carried by a co-employee. She then consulted Dr. Esmond Fatter, who had been her family physician since 1954. He testified that plaintiff was rendered permanently disabled by this particular accident because it in turn aggravated her pre-existing condition of disability brought about by two previous accidents, for which he had treated her in 1966 and February of 1968. In this first accident, which also occurred while she was on the job at defendant's restaurant, she suffered a broken rib initially but which was eventually diagnosed as a neuroma or a soft tissue injury of the nerve in her back. His treatment for this condition stretched over a nine month period, at the end of which she continued to work with difficulty and to suffer pain at the point of the neuroma. Then in February, 1968, she sustained a second accident while on the job, and while she continued working she was bothered with pain in the *193 back radiating to the neck causing discomfort while she worked on the job and at home. When she returned to him after the accident of September 10, the doctor formed the impression that the two previous traumas had caused soft tissue injury from which she had not recovered and that this latest trauma aggravated the pre-existing injury. Shortly after this examination, Dr. Fatter retired from his practice and plaintiff sought treatment from Dr. Paul Naccari.
When he first saw plaintiff on November 12, 1968, she complained of pain in her arms, her chest and the top of her head, but did not complain of any neck pain. On examination, she exhibited a full range of motion of the shoulders and the neck. She continued to complain of pain even after a series of diathermy treatments. He did not see plaintiff from November 26, 1968, until February of 1969, when she came to him with bronchial complaints primarily but also with posterior chest pains. Dr. Naccari last saw the plaintiff on March 24, 1969, when he noted that the examination was negative.
However, on March 26, 1969, she sought medical treatment at Charity Hospital, with complaints of pain in her neck radiating into the back, shoulders and upper arms. She continued to be treated at Charity Hospital and in July, 1969, a myelogram revealed defects in her cervical spine at C-5 to C-6. Surgery was recommended but plaintiff declined to submit to such.
In April, 1970, plaintiff consulted Dr. Raeburn C. Llewellyn with complaints of pain in her neck, shoulders and arms. His examination disclosed restriction of cervical motion, mild spasm of the cervical muscles and tenderness on palpation of the muscles at the base of the skull, and he concluded that the complaints were residuals of cervical disc injuries. In November, 1972, he again found that plaintiff was sore at the base of the skull with spasms of the cervical muscles on both sides of the neck and tenderness on palpation. X-ray photographs revealed narrowing of the disc spaces and spurring related to the natural aging process. He opined that the plaintiff's problem was the residual cervical spine sprain, cervical disc lesions, demonstrated by the myelography performed at the Charity Hospital, together with the natural aging process. In connection with the latter which he sometimes referred to as osteoarthritis, he testified that disc herniation can be produced with slight trauma where such a condition exists; that once a person with pre-existing osteoarthritis is injured the degree of response to treatment is less than otherwise, and he concluded that the disc herniation or lesion was either aggravated or caused by the injury of September 10, 1968. On cross examination, the following testimony was elicited from Dr. Llewellyn:
"Q. Now, doctor, is it consistent with the injury of September 10, 1968, being causedbeing the cause of the patient's difficulties that you found; is it consistent that she would be completely free of neck pain for a period of time, of some six months after the injury?
A. With trauma being a prominent part of the causation of the complaints, I would feel that that patient or a patient would have some aches and pains from time to time.
Q. Would you feel that the patient, if that accident caused what you found, would you feel that that patient would go to a doctorher family treating physician, and make absolutely to complaint of neck pain at all for six months?
A. No, sir.
Q. Would you feel that that patient would go to the doctor and have a complete range of motion in the neck; a complete range of painless motion in the neck?
A. No, sir."
*194 It is on the foregoing testimony that defendants depend primarily for their case that plaintiff did not prove any connection between her accident of September 10, 1968, and her condition of disability at the time of the trial. Quoting from defendants' brief, they express their position after alluding to the above excerpt from the transcript of trial testimony, as follows:
"It is easily seen that this is crucial to the determination of this issue of connexity. If there were complaints of pain in the neck area for the first six months or so, then Dr. Llewellyn's theorem proves out. If there were no such complaints, then serious doubt is cast upon the efficacy of this opinion." (Emphasis supplied)
In his reasons for judgment, the trial court found as follows:
"The evidence in this case shows that Mrs. May has consistently complained of back and neck pains subsequent to the September 10, 1968, accident up to, including and after the positive myelogram performed at Charity Hospital some six months after the accident of September 10, 1968.
"The above is substantiated by the report of Dr. Richard Warren Levy dated February 19, 1969, third paragraph, first four lines, wherein he relates:
`At the time that I saw her in November, 1968, she was complaining of pains in the neck going up towards the back of the head, pain in both shoulders and arms, and pain between the shoulder blades.'
"This Court found plaintiff to be consistent and truthful."
These findings of the trial judge are borne out by the record. Dr. Levy saw this plaintiff at the instigation of her employer and emphatically reported that she was complaining of pain in her neck as quoted above. In itself this refutes defendants' position that she made no complaints of pain during the first six months. Furthermore, it is significant that Dr. Naccari stated that it was possible that a person would start having physical pain after a lapse of two months from the time of the trauma which caused such pain.
Upon our review of this record, there is no question but that some contradictions emerge from the testimony of the plaintiff and Dr. Levy's report on the one hand, and the testimony of Drs. Fatter and Naccari on the other hand, to the effect that plaintiff did not register any complaints about her neck. In effect, defendants would have us overlook the report of Dr. Levy and reject the testimony of the plaintiff as unworthy of credibility. But we do not substitute our judgment for that of the trial court in evaluating the credibility of witnesses or in making factual determinations from evidence which is sometimes contradictory and confusing in the absence of manifest error. Orgeron v. New Orleans Stevedoring Company, 294 So.2d 844 (La.App. 4th Cir. 1974), and Rebaudo v. Security Insurance Co., 259 So.2d 467 (La.App. 4th Cir. 1972). The trial judge was impressed with plaintiff's consistency and truthfulness and we are not inclined to disturb his findings on that point, especially since her testimony was corroborated by Dr. Levy's report.
In our review of this case we are also impressed with the testimony of plaintiff's treating physicians which presented a picture of successive accidents, each of which left plaintiff partially disabled but able to work despite some pain until the accident of September 10, 1968, which finally rendered her totally and permanently disabled. It is apparent from her medical history that she was continuously suffering pain over a period of some years prior to the accident, and while the injury to her cervical spine was the final blow it was not simply an isolated injury detached from a number of other problems which became aggravated thereby. The post accident history shows that she continuously sought medical treatment even to hospitalization and subjection to a myelogram and that she never did recover from that disability *195 as of the time of the trial four and a half years after the accident.
There hardly seems to be any doubt about her being disabled, although there is some dispute as to precisely what was the single cause, if anything, of her disability just after the accident did occur. Yet the undisputed fact remains that before the September 10, 1968, accident she was able to perform the job she had held for 16 years, and after September 10 she was unable to do so; and that she demonstrated a positive myelogram ten months later with no intervening trauma. This subjects the case to the following principle enunciated in Carlock v. Gross, 167 So.2d 464 (La. App. 4th Cir. 1964):
"It is well settled that when a compensation claimant is unable to specifically classify or indicate the type of injury he has sustained does not preclude a recovery of compensation; the test is disability vel non and not the nature of the injury. Jackson v. Bituminous Casualty Corp., La.App., 153 So.2d 585; Johnson v. Atlantic and Gulf Stevedores, Inc., La.App., 102 So.2d 518."
Accordingly, the judgment is affirmed.
Affirmed.