SAMUEL, Judge.
Plaintiff filed this suit against two defendants, Ford Motor Company, as manufacturer, and Canal Motors, Inc., as vendor, of her 1970 Ford automobile. She al *655 leges she was injured when the car’s accelerator stuck and caused her to veer off the road into a pond or lagoon. Teleflex, Inc., the manufacturer of the accelerator linkage cable used in the automobile, was later added as a defendant. The three defendants answered, denying responsibility for the accident. In addition, Ford Motor Company and Canal Motors, Inc. filed third party petitions against each other seeking indemnity in the event of an adverse judgment.
After a trial on the merits, judgment was rendered in favor of all defendants, dismissing plaintiff’s suit. Plaintiff has appealed.
Plaintiff testified: She purchased a new 1970 Ford Maverick automobile from Canal Motors, Inc. on October 22, 1969. On December 8, 1969, at approximately 10 a. m., she began to drive toward Gulfport, Mississippi for a job interview scheduled for 11 a. m. As she approached the intersection of U. S. Highway 190 and U. S. Highway 90, she noticed a sign indicating the approach of the intersection, where she was required to bring her automobile to a stop. She slowed the automobile slightly, but accelerated again because there was still some distance to travel between the sign and the intersection. As she approached the intersection, she moved her foot from the accelerator, but the car did not slow down. As a result, she ran through the stop sign, made a wide left turn across U. S. Highway 90, and drove into a lagoon in a roadside park.
The configuration of the intersection in question is commonly called a “T” intersection. Highway 190 ends at its intersection with Highway 90, so that traffic approaching Highway 90 on Highway 190 must either turn right or left at the intersection. Plaintiff did neither and drove into the lagoon as stated above.
The automobile began to sink in the water, and plaintiff escaped by rolling down the window and swimming out. Mrs. Irene Brewster, a passing motorist (who was acquainted with the plaintiff) stopped, rendered assistance and remained with plaintiff from the time of the accident until they returned to the scene to talk to the investigating Louisiana state trooper. Meanwhile, two of plaintiff’s friends, Dr. and Mrs. Pursley, of Bay St. Louis, Mississippi, were contacted. Mrs. Pursley, Mrs. Brewster, and plaintiff returned to the accident scene, where plaintiff gave her statement to Trooper John Holcomb.
The record reflects that plaintiff did not mention the sticking accelerator to Mrs. Brewster, to Dr. Pursley, to Mrs. Pursley, or to Officer Holcomb. The absence of any such mention shortly after the accident is of obvious significance. Officer Holcomb testified plaintiff told him that when she realized she was at a stop sign she applied her brakes but could not stop.
Other than plaintiff’s own testimony, the only evidence to support her contention the accelerator stuck was the testimony of Wayne A. Benton, offered by plaintiff as an expert mechanic. Benton testified he examined the automobile at the premises of Brown’s Wrecker Service in Slidell, Louisiana, several days after the accident. At the time of his investigation, the mud, water, and debris which entered the car when it sank in the lagoon had not been removed. He merely reached into the automobile with his hand and pushed the accelerator down several times, without starting the engine. He testified he also looked under the dash board and under the hood. Benton testified that after a number of tries at pushing the accelerator down, it would stick for several seconds and then snap back into position. He expressed the opinion that the accelerator cable, which linked the accelerator pedal with the carburetor, was binding. He based his opinion only on certain “flexing” he observed in the cable. However, on cross examination he admitted that without total disas- *656 sembly of the cable, he could not know why the sticking took place.
Ford Motor Company introduced the testimony of three persons in support of its contention that no defect existed in the automobile. A. D. Smith, Jr. and Ken Mitchell both inspected the automobile after the accident and found the accelerator cable working properly without any sticking or binding whatever. Of significance is the testimony of Kelly Talamo, who purchased the vehicle in suit after the accident. Mr. Talamo testified he checked the throttle system, it worked properly, and he had no reason whatever to replace the throttle cable.
There is little dispute regarding the legal principles involved in this case. In Weber v. Fidelity & Casualty Insurance Company,[1] the Supreme Court enumerated the elements necessary for a plaintiff to prove in order to succeed in a suit of this nature. The plaintiff must prove: (1) a defect in the automobile; (2) the defect existed at the time the automobile was manufactured; (3) the defect rendered the automobile unreasonably dangerous; and (4) the defect caused the accident sued upon.
The only issues for the trial court’s decision were questions of fact, which he resolved in favor of the defendants by finding the negligence of plaintiff to be the sole cause of the accident. Considering the great weight afforded conclusions of a trier of fact in Louisiana when there is a necessity to reconcile conflicting evidence,[2] the conclusion of the trial court in no way discloses any manifest error.
Equally important, however, is the vacillating nature of plaintiff’s testimony. She first testified she tried unsuccessfully to apply her brakes before running through the intersection. However, under cross examination she qualified her earlier testimony by stating “I think that I touched the brakes”. Finally, also on cross examination, she admitted “I didn’t apply the brakes. I let the car go through the highway.”
Moreover, the testimony of Benton, the expert witness offered by plaintiff, was completely disregarded by the trial court because he untruthfully represented his qualification as an expert. Benton testified he had expertise in physics, mathematics, and calculus which he gained in courses taken at George Peabody Teachers’ College, in Nashville, Tennessee. It was disclosed and stipulated by all parties that Benton never attended Peabody College and received no degrees therefrom. The disclosure occurred after Benton had been accepted as an expert witness and had completed his testimony.
We find the trial judge did not commit error by disregarding Benton’s testimony in its entirety. His perjury was directed to a material fact in the case, namely his qualification as an expert witness, and it is doubtful that, absent that perjury, he would have been accepted as an expert witness. In addition, the trial judge properly considered that perjury as it reflected on the witness’s credibility. Application of the rule falsus in uno, falsus in omnibus is a matter within the discretion of the trial judge, who may or may not reject the testimony of a lying witness in its entirety if the circumstances of the case indicate the false statement was on relevant or pertinent matters.[3]
*657 Under the circumstances, the trial judge was faced with evidence of doubtful credibility offered by plaintiff and credible, un-impeached evidence offered by defendants. We find no error in his conclusion.
For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

. 259 La. 599, 250 So.2d 754.

. See, e. g., Canter v. Koehring Company, 283 So.2d 716 (La.S.Ct.1973) ; May v. Finest Foods, Inc., La.App., 303 So.2d 192.

. See, for example, Swann v. Holley, La.App., 263 So.2d 478.