SCHOTT, Judge.
Plaintiff has appealed from a dismissal of his claim for damages allegedly resulting from an assault and battery perpetrated on him on March 14,1973, by defendants, Horace Wright and his son Billy. When the testimony was completed the trial judge gave the following reasons for his judgment:
“From the evidence the Court concludes that Mr. Wright did not hit Anthony, that the only fighting that took place consisted of pushing and scuffling, wrestling on the ground between the two boys; that both of these boys leave an awful lot to be desired in these premises, both by their conduct and their language. “The Court concludes from the evidence that both boys used foul language, both boys pushed and got pushed, both boys wrestled on the ground and that one was the cause of the fight just as much as the other.”
The trial consisted of the testimony of plaintiff and a neighbor, Mrs. Dimaggio, who if believed by the trial court would have provided him with a basis for deciding that the attack on him was unprovoked and consisted of a beating by both defendants, culminating in plaintiff running from his own yard where the attack took place to Mrs. Dimaggio’s house on the other side of the street, chased by Horace Wright to Mrs. Dimaggio’s gate, terminating only when Mrs. Dimaggio warned Horace Wright not to enter her premises. On the other hand, the trial judge apparently believed the testimony of defendants, together with two of Horace’s employees who had all been previously engaged in a painting job on the house next door to plaintiff’s, and who testified that plaintiff provoked a scuffle with young Wright when he verbally abused Horace by cursing him.
The trial judge’s decision was essentially a credibility call and on that basis would not support an action for assault and battery under the circumstances of this case in accordance with the principles of law set forth in Tripoli v. Gurry, 253 La. 473, 218 So.2d 563.
Two of plaintiff’s specifications of error center around the court’s refusal to accept as true the testimony of Mrs. Dimaggio. He complains that the heart of the trial *244 judge’s error was in failing to believe that Mrs. Dimaggio had a clear view of the entire affair from her front porch where she said she was. sitting just across the street from the scene of the attack. Plaintiff complains that the court declined to view the scene, arguing that such a view would have convinced the trial court that Mrs. Dimaggio could have seen the entire affair from her vantage point, and he complains that the trial court was in error when refusing to grant a new trial on the basis of photographs which plaintiff took after the trial and which demonstrate that Mrs. Dimaggio was in a position to see the whole incident if she was there in the first place. In the court’s reasons for judgment, however, the following was said:
“There is grave doubt in the Court’s mind —we’ll add this to the reasons — there is grave doubt in the Court’s mind as to whether or not Mrs. Dimaggio was on the porch rather than grave doubt as to whether her vantage point from that porch was there.”
The trial court’s doubt is supported in the record by the testimony of the two defendants and their two employees that Mrs. Dimaggio was not on the porch in the first place.
Plaintiff attaches much significance to the fact that defendant Billy Wright pleaded guilty in Municipal Court in the City of New Orleans to disturbing the peace by fighting, established by the introduction in evidence of a certified copy of that court’s record. He complains that the trial court did not give sufficient weight to that evidence and he argues the doctrine of falsus in uno falsus in omnibus based on the fact that before this certified copy of guilty plea and conviction was introduced Horace and Billy had both unequivocally denied that Billy had pleaded guilty and been convicted of this crime in the Municipal Court.
At the outset it must be observed that the offense for which Billy was convicted on his guilty plea was not an assault but simply disturbing the peace by fighting. There is no question but that he and plaintiff were guilty of this offense.
As to the doctrine of falsus in uno, as said in Mackbee v. Ford Motor Company, 327 So.2d 654, writ refused, (1976), the application of this rule is a matter within the discretion of the trial judge who may or may not reject the testimony of a lying witness in its entirety if the circumstances of the case indicate the false statement was on relevant or pertinent matters. Under all the circumstances of this case, we cannot say that the trial judge abused his discretion in accepting the testimony of defendants on the essentials even though they did lie about this one element of the case.
The most troublesome specification of error presented by plaintiff is based on the trial court’s failure to complete the trial by allowing presentation of medical evidence. At the beginning of the trial plaintiff’s counsel stated that the liability aspect of the case would be tried at that time, reserving the right to present medical testimony later. It was agreed by all counsel and the court that plaintiff would subsequently take the depositions of a dentist, Dr. Leg-gio, a neurosurgeon, Dr. Corales, and another physician, Dr. Dean. However, at the conclusion of the trial the trial judge made the following observation:
“With this determination of the facts and circumstances surrounding this cause of action, in all fairness to the parties concerned, the Court thinks it would be folly and unwise for the plaintiff to incur more and additional expense in this litigation by getting into evidence information surrounding the medical aspect of this case. “On the merits, plaintiff’s evidence does not preponderate to the degree required, does not fully rebut the testimony of all of the witnesses which are conflicting on both sides, and does not prevail; and to incur the added expense, to incur more delays and to incur the time and the effort and the expense of counsel in the presentation of further evidence to the Court along the lines of the medical aspects of the case seems to be a needless point of expense and the Court will, therefore, rescind all previous comments *245 and orders rendered in these premises relative to a continuation of this case for the presentation of further evidence or as an open case. The Court rescinds those orders and at this point renders judgment in favor of the Defendant, dismissing the plaintiff’s case.”
While plaintiff’s medical evidence was originally said to be pertinent only to the question of quantum of damages, in brief to this court he argues that it would also be pertinent on the question of liability, in that it would demonstrate the seriousness of the injuries as opposed to the characterization of those injuries as minor cuts and bruises by defendants’ witnesses. From our examination of the evidence and the testimony, however, it does not appear that this evidence would have led the trial court to any other conclusion with respect to liability.
After the incident plaintiff did seek medical treatment in the emergency room of a local hospital. The hospital record was introduced in evidence and it contains as the final diagnosis “multiple minor contusions.” The physical findings at the hospital are as follows: “Nose is straight and not bleeding. There are no lumps on scalp. There is contusion and swelling of both upper and lower lip — teeth intact. Several superficial abrasions and brush burns of both elbows and both knees. Has full use and function of all extremities.” This contradicts the testimony of plaintiff, his father who came on the scene after the fight, and Mrs. Dimaggio, to the effect that plaintiff’s nose was bleeding, and it does not lend any support to plaintiff’s testimony that Horace Wright struck him with a hard blow to the head.
Medical bills introduced by plaintiff show that he consulted Dr. Corales for the first time on March 26,1975, had brain scans and EEG’s at a local hospital on the advice of Dr. Corales on April 8, 1975, had X-rays taken on March 26, 1975, saw Dr. Dean on July 1, 1975, and had the dental work done in February and March in 1975. Plaintiff testified that he had headaches after the incident which prompted him to see Dr. Corales.
The trial judge must have inferred that there was no way plaintiff could relate these medical expenses to the incident in question. They were all incurred two years or more after the incident and any relationship would necessarily depend upon the subjective complaints and attendant credibility of plaintiff, which the trial judge had already rejected. Under these circumstances we cannot see how the introduction of this medical testimony would have changed the outcome of the case with respect to liability.
There can be no doubt but the procedure employed by the trial court, however, in cutting plaintiff off from introducing his evidence with respect to quantum is inconsistent with the jurisprudence and our entire concept of appellate review of facts as required by Art. 5, § 10(B) of the Louisiana Constitution of 1974.
In Danos v. Central National Insurance Co. of Omaha, 211 So.2d 106 (La.App. 1st Cir. 1968), the case was tried on liability alone, plaintiff’s suit was dismissed and appeal was taken. The court observed that “[t]he law reprobates piece-meal trial of cases.” In Jeansonne v. Willie, 188 So.2d 170 (La.App. 4th Cir. 1966) where all parties agreed that the case would be tried on liability alone, this court annulled and set aside the judgment remanding the case to the trial court for a full trial on quantum. The court said:
“Whereas C.C.P. art. 2164 authorizes us to render any judgment which is just, legal, and proper upon the record on appeal, we think the ends of justice and orderly procedure dictate that we annul and set aside those portions of the judgment complained of by appellants, and that the matter be remanded to the lower court to be there fully tried, the interested parties to adduce all and whatever evidence they deem sufficient and proper bearing on the question of quantum or any other untried issue in the case, after which the trial judge is directed to render judgment anew. If an appeal is then taken from that judgment this court will be in a position to properly dispose of the case with one judgment.”
*246 Under our constitution a litigant is entitled to an appeal on the facts and the law. No matter how strongly the trial court may feel about the result on liability plaintiff is entitled to have a review of that case made by the Court of Appeal, and to permit a trial judge to hear the evidence on liability and then take no further evidence on the theory that Court of Appeal will doubtless affirm such judgment is to make the appellate process an exercise in futility. We know of no precedent or authority for such a procedure and ordinarily we would not hesitate to take the same action as we took in the case of Jeansonne v. Willie.
However, in the instant case, because there is some medical evidence in the form of the hospital record and the medical bills as well as the testimony of plaintiff and his father as to how the medical examination might be related to the incident sued on, we have concluded that it is far more probable than not that this medical evidence would have no probative value in this particular case.[1] Furthermore, the result reached in the Daños case seems to be the better result to reach in this case. There, after the court criticized the procedure employed by the trial court in trying the matter on liability alone the court said:
“We are proceeding with disposition of this case because the evidence was so strong there was no negligence on the part of the driver and that the finding by the District Judge was correct.”
Likewise, in this case, considering all the circumstances and guidelines for appellate review set out in Canter v. Koehring, La., 283 So.2d 716 (1973) we have concluded that the judgment of the trial court should be affirmed.
AFFIRMED.
GULOTTA, J., concurs with written reasons.

. Plaintiff did not consult any of the doctors whose testimony he sought to solicit until more than two years after the accident and more than one year after the filing of this suit. It necessarily follows that these experts could not have testified as to the plaintiffs physical appearance on the date of the incident.