FLETCHER, Judge.
Susan Wyatt [mother] appeals a final judgment of marriage dissolution which orders joint parental responsibility but awards primary residential parent status to Neil B. Wyatt [father]. We reverse.
The parties were married for approximately eight years and produced two children, aged five and seven. In May 1993, the parties executed a settlement agreement [agreement] under the terms of which, for the most part, they lived separately for approximately one and a half years before the final judgment of dissolution was entered in this case. Under the agreement, the mother was designated primary residential parent and the father was granted “extremely liberal and frequent visitation rights.” The agreement also provided,
“if the Husband [father] subsequently moves the court for a change of primary residential custody of either or both children there shall be no presumption created against him by the terms or execution of this Agreement and his burden with respect to such a petition, shall be proving a change of circumstances subsequent to the Agreement and it being in the best interest of the child or children.”
R. 157 (emphasis added).
Within a month of the execution of the agreement, the mother purchased a new residence and moved there with the children and her fiance. Although the father did not approve of the fiance’s residence in the home, he did not request a change of primary residential status. The mother continued as primary residential parent under the terms of the agreement until December 1993, when she acknowledged an addiction to prescription pain medication and voluntarily entered an addiction treatment program for approximately one month. At the beginning of her treatment, the father, with the mother’s consent, obtained an “ agreed temporary custody order”, granting him primary custody of the children “without prejudice.” In his original “emergency” motion seeking the temporary order[1] filed the same day that the order issued, the father stated that such order was requested “until such time as the Wife [mother] has made a full recovery and can resume her responsibilities as primary residential parent.” R. 38. On the following day, an amended motion was filed changing the quoted language to “until such time as the Wife has had a full opportunity to be heard on the issue of temporary and permanent primary residential custody.” R. 44.
The mother was released from her treatment program with 100% attendance and all negative drug tests on January 27, 1994. She began follow-up care with the program and weekly therapy sessions with a private therapist who reported that she was making considerable progress and could adequately care for the children; however, the father continued to exercise his authority under the “temporary” order, refusing to allow the children to have overnight visitation with the mother and limiting the contact of the mother with the children. About two months after the mother’s release from the treatment program, the father began taking the children to the mother’s home before school each morning and picking them up when he completed his day. The mother fed the children and prepared them for school, picked them up from school each day, and took care of all their needs until such time as the father picked them up and took them to his home to sleep. He refused to allow overnight stays with the mother as long as her fiance was in the home.
In July 1994, the fiance moved from the mother’s residence, and soon thereafter, the father resumed his prior practice of leaving the children overnight at the mother’s home and in her exclusive care during the school week. This eustody/ehild care arrangement, under which the mother functioned as the “de facto” primary residential parent, existed until the June 9, 1995 entry of the final judgment of dissolution under review.
*1142 Following an extended four-day hearing at which both sides presented testimony on the issue of primary residential parent status, the trial court entered the challenged final judgment of dissolution which adopts all provisions of the parties’ 1993 settlement agreement except for the designation of the mother as primary residential parent. In making her ruling in favor of the father on the disputed issue of primary residential parent status, the trial judge specifically stated that she “followed that provision [quoted above] in setting the burden or standard for determining the award of primary residence in this cause.” R. 157. We, likewise, have reviewed the record evidence in light of the agreed-to burden or standard and find that the evidence is insufficient to show that the father proved a “change of circumstances subsequent to the Agreement and [that it is] in the best interest of the ... children” that he be designated primary residential parent. Therefore, we find that the trial court abused its discretion in awarding primary residential parent status to the father.
With the exception of the mother’s voluntary entry into and successful completion of the addiction treatment program, all of the facts relied on by the trial court as support for its decision on the residential parent issue either were well known to the father before he entered the agreement giving primary residential parent status to the mother and thus were not changes “subsequent to the agreement,” or else — as in the case of the presence of the fiance in the mother’s home — were not in existence at the time of the entry of the final judgment. As such, none of these facts, or the court’s opinions as to the mother’s character allegedly arising from them, provided a sound basis for the court’s rejection of the agreement’s designation of the mother as primary residential parent. See Solly v. Solly, 384 So.2d 208 (Fla. 3d DCA 1980); Farrow v. Farrow, 263 So.2d 588 (Fla. 2d DCA 1972); cf. Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991).
The only actual post-agreement “change of circumstance” proved on this record, the mother’s successful addiction treatment, also does not support the trial court award of primary residential parent status to the father. As a matter of policy, we decline to affirm a result which, under the facts of this case, effectively penalizes an otherwise fit, competent parent[2] for the commendable action of recognizing an addiction to prescription drugs, seeking assistance with, and successfully completing treatment for that problem. This policy, coupled with the record evidence showing that the children have, for most of their lives, with the express consent of the father, spent a majority of their time in the care of the mother both before and after the addiction treatment and have apparently suffered no detrimental effects from this arrangement, requires a finding that the father failed to sustain his agreed-to burden to show that it is in the best interests of the children to deviate from the terms of the agreement he knowingly entered designating the mother as primary residential parent. The trial court’s judgment to the contrary is erroneous and therefore is reversed.
Reversed and remanded with directions to award primary residential parent status to the mother.

. The motion was filed in response to a highly charged confrontation between the parties which arose from an attempt by the mother to take the children away from the father’s residence after she discharged herself from the addiction treatment program within days of her admittance. Once the mother returned to the program and actively undertook treatment, it appears that no further incidents of this type took place.

. Clearly, the father can make no allegation that the mother is an "unfit” parent given the almost total responsibility for the children that he has always — with the exception of a brief period several months after her she left the treatment program — placed on her shoulders as shown on this record.