694 So.2d 645 (1997)
Sherrill Warlick HARGROVE (now Mizell), Plaintiff-Appellee,
v.
Paul B. HARGROVE, Defendant-Appellant.
No. 29590-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1997.
Order Denying Rehearing June 12, 1997.
*646 Paul Henry Kidd, Jr., Monroe, for Defendant-Appellant.
Albert E. Loomis, III, Monroe, for Plaintiff-Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
WILLIAMS, Judge.
In this child custody action, Paul Hargrove appeals a trial court judgment denying his rule to modify custody and maintaining his former wife, Sherril Warlick Hargrove Mizell, as the domiciliary parent of their minor child. For the following reasons, we affirm.

FACTS
The parties, Paul Hargrove and Sherril Hargrove Mizell, were married on August 25, 1984, and established their matrimonial domicile in Ouachita Parish. One child was born of the marriage, Lesley Diane Hargrove, on November 1, 1986. The couple separated in April 1990, when Mr. Hargrove left the family home. He took the child and moved into his parents' house. In May 1990, the parties were granted a separation from bed and board, dissolving the community of acquets and gains previously existing between them.
Subsequently, Sherril Mizell filed a petition for divorce and in June 1991, the district court granted the parties joint custody of their minor child. The plan of implementation designated the mother as the domiciliary parent during the school year, subject to the father's visitation on every Wednesday evening, Sunday afternoon and alternating holidays. The father was granted physical custody of the child during the summer months.
On September 20, 1991, the district court granted the parties a divorce and designated Mr. Hargrove as the domiciliary parent while Mrs. Mizell was out of the state to study nursing. The divorce judgment further provided that the June 1991 Implementation Plan's custody and visitation schedule would resume upon the mother's return to the state of Louisiana. In September 1991, Mrs. Mizell traveled to Kentucky and Mr. Hargrove assumed physical custody of his daughter. Subsequently, Mrs. Mizell married Kevin Mizell and moved to Glenmora, Rapides Parish, Louisiana. In August 1992, the child went to live with her mother and entered kindergarten.
In July 1994, Mrs. Mizell sought medical treatment because she was having trouble swallowing and her hands were swelling. Dr. Miguel Garcia examined Mrs. Mizell and diagnosed her condition as systematic scleroderma, which involves a thickening and tightening of the skin that can affect the patient's esophagus and lungs, and eventually cause death.
In November 1995, Mr. Hargrove was informed that Mrs. Mizell was acting irrationally. She had been arrested for shoplifting at a department store in Alexandria, Louisiana. Kevin Mizell and Lesley went to the police station and drove her home. Mrs. Mizell stated that a man had forced her to steal the items. The next day, she claimed that a man had broken into the house and attacked her. She also fired a gun out of the back door into the ground. Mrs. Mizell later admitted that she had lied about the attack.
On November 9, 1995, Hargrove picked up his daughter for his weekend visitation. The parents met in Monroe on Sunday and decided that the child would remain with her father while the mother sought treatment for depression related to her potentially disfiguring and life-threatening disease. The intended duration of this stay was disputed by the parties. On November 13, 1995, Mrs. Mizell was admitted to Regional Crossroads Hospital in Alexandria for psychiatric treatment.
Mr. Hargrove enrolled Lesley in a Ouachita Parish elementary school. He subsequently refused to return the child to Mrs. Mizell following her release from the hospital. Instead, Hargrove filed a "Rule to Change Custody" and was designated as the temporary domiciliary parent of the minor child pending a hearing on his motion to modify the custody order. Mrs. Mizell filed an answer and reconventional demand seeking to rescind the temporary custody order.
The trial court heard evidence on the rule to modify custody on May 2 and 3, 1996, and issued an order that the minor child remain in the father's custody until the end of the *647 school year. The hearing was continued to July 24-26, 1996, and concluded in September 1996. The trial judge heard testimony from the parties and their expert witnesses. He also spoke privately with the child in his chambers. The trial judge stated that he considered the child a very important witness and noted her expressed desire to live with her mother. The trial court's judgment denied the rule to change custody, finding that Mrs. Mizell is capable of performing her parental duties. Mr. Hargrove appeals.

DISCUSSION

Admissibility of Evidence
The defendant, Paul Hargrove, contends the trial court erred in admitting evidence of his behavior that occurred prior to the custody order of June 1991. He argues that parties in custody actions are limited to presenting evidence concerning circumstances that have arisen since the previous custody order.
The court shall consider all relevant factors in determining the best interest of the child. LSA-C.C. Art. 134. A trial judge's assessment of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Dupree-Simpson Farms v. Helena Chemical Co., 28,739 (La.App.2d Cir. 10/30/96), 682 So.2d 838.
Here, the trial court found that testimony regarding certain conduct of the parties before and during the marriage was relevant to the custody decision. The defendant has not presented any authority to support his argument that the trial court is limited to considering only those events occurring after the previous custody order in determining the child's best interest. In fact, Article 134 requires the court to consider all relevant factors. We conclude that the trial judge did not abuse his discretion in admitting evidence of both parties' behavior during the time period prior to the custody order. The assignment of error lacks merit.

Expert Opinion
Hargrove argues the trial court erred in disregarding the expert testimony. He contends that each party's expert opined that the environment provided by the father was superior for the child.
After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony depends upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. Warlick v. Warlick, 27,389 (La.App. 2d Cir. 9/29/95), 661 So.2d 706.
Hargrove's expert witness, Dr. Ned Jabour, is a licensed counselor in Louisiana, but not a licensed psychologist, because he has not obtained board certification. Dr. Jabour testified that he had seen the child once a week over a period of seven months. He opined that a "role-reversal" had occurred between Lesley and her mother, with the child assuming the maternal role. He did not talk with the child's mother. Dr. Jabour testified that the environment of the father's home in Monroe was more appropriate and provided more stability for the child than the mother's home situation.
The plaintiff, Sherril Mizell, presented testimony by Dr. Bobby Stephenson, a licensed psychologist in Louisiana. Dr. Stephenson saw the child on four occasions and talked with the mother separately. Dr. Stephenson testified that he had not seen signs of a "role-reversal" between mother and daughter and had not observed anything unhealthy in their relationship. He stated that Mizell's acts of shoplifting and falsely reporting an attack against her indicated that she had experienced acute distress and one needed to consider whether she had sought treatment and if her condition had improved since that time. Dr. Stephenson opined that a child would not necessarily mimic a parent's negative behavior if it was explained to the child that her mother's improper conduct was related to her illness.
Contrary to defendant's assertion in brief, Dr. Stephenson did not testify that the father's home environment was preferable to that of the mother. He responded to several hypothetical situations posed by defendant's counsel, but stated that the main concerns were the child's daily living arrangements, *648 who is caring for the child and her relationship with her parents. The trial court heard the testimony of both experts and weighed their credibility and qualifications. The trial court could have reasonably accepted Dr. Stephenson's opinion regarding Lesley's relationship with her mother. Therefore, we cannot say the trial court abused its discretion in weighing the expert testimony. The assignment of error lacks merit.

Modification of Custody
Hargrove contends the trial court erred in denying his rule to change custody. He argues that his former wife's acts of shoplifting, her false claim of being attacked, her drug use and her admission to Crossroads Hospital establish a sufficient change in circumstances to support a modification of the custody order.
In a custody case, where a considered decree has not been rendered, the party seeking to modify the custody arrangement is required to prove that a change of circumstances materially affecting the welfare of the child has occurred since the original custody decree and that the proposed modification is in the best interest of the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Duvalle v. Duvalle, 27,271 (La.App.2d Cir. 8/23/95), 660 So.2d 152.
In the present case, Mrs. Mizell admitted that over a period of several days in November 1995, she had been arrested for shoplifting, lied about being physically attacked and had smoked a marijuana cigarette. She was voluntarily admitted to Crossroads Hospital, where she was treated by Dr. Reuben Roy, a board certified psychiatrist, who testified by deposition. Dr. Roy opined that Mizell's behavior was the result of depression and attention-seeking related to her disease.
The defendant asserts that testimony concerning plaintiff's reputation for drug use, her various prescription medications and marijuana use establishes that she is a drug abuser. Although three witnesses from Glenmora testified that they had heard rumors about plaintiff taking too many prescription drugs, the source of these rumors is unknown and the witnesses stated that they did not necessarily believe everything they heard.
Dr. Roy testified that he did not find that plaintiff overused medication, based on his observation that she was complying with medicine doses, was not self-prescribing and did not show drug-seeking behavior in the hospital. In addition, after interviewing plaintiff and administering a Substance Abuse Subtle Screening Inventory (SASSI) evaluation, a hospital counselor concluded that plaintiff did not present as chemically dependent. Although plaintiff's use of marijuana is troubling, we note that she testified it happened only once during a personal crisis and there is no indication that she has repeated this behavior.
The mother's actions in November 1995 understandably caused the child's father to be concerned. A psychological evaluation of Mrs. Mizell shows that her personality has "hysteroid characteristics," which helps explain her histrionic reaction to fear of the potentially devastating physical effects of unchecked scleroderma. However, the medical testimony shows that plaintiff responded to treatment and that her condition was considerably improved at the time of discharge. Although the mother's contraction of scleroderma and her episode of depression are a change in circumstances, the father nonetheless bears the burden of proving that a modification of custody is in the child's best interest.
In separate assignments of error, Hargrove contends the trial court erred in denying his rule to modify the existing custody arrangement and in giving excessive weight to the child's expressed desire to live with her mother. Hargrove argues that he is better able to provide the child with a stable home environment.
The paramount consideration in a change of custody contest is always the best interest of the child. LSA-C.C. Art. 131; Evans v. Terrell, 27,615 (La.App. 2d Cir. 12/6/95), 665 So.2d 648, writ denied, 96-0387 (La. 5/3/96), 672 So.2d 695. In determining the child's best interest, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented. LSA-C.C. Art. 134; Evans v. Terrell, supra.
*649 A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Powell v. Powell, 28,911 (La.App. 2d Cir. 12/11/96), 684 So.2d 1084. An appellate court should be reluctant to interfere with custody plans ordered by the trial court in the exercise of its discretion. Powell v. Powell, supra.
In the present case, there was extensive testimony concerning the living conditions and family relationships of the respective parents. The trial court interviewed Lesley, found that she was an impressive witness and considered the child's reasonable preference as provided in C.C. Art. 134(9). Hargrove contends that a taped telephone conversation shows that the mother cursed at Lesley and exerted emotional pressure which tainted the child's expressed wish. Although Mizell's use of several harsh words reflects poor judgment, we note that such language was not repeated during other conversations between mother and daughter which were also recorded by the father. We conclude that the trial court properly considered the child's preference among several significant factors. The assigned error lacks merit.
The trial court also considered the mother's mental and physical health in determining the best interest of the child. C.C. Art. 134(7). As previously discussed, Mrs. Mizell was diagnosed with scleroderma, which is a potentially debilitating disease. However, the medical evidence established that Mizell's current physical condition has stabilized. Dr. Miguel Garcia, the mother's treating physician, testified by deposition that her skin disease had responded to treatment and had been controlled with medication. Thus, the trial court could reasonably find that the scleroderma would not prevent Mizell from caring for the child in the foreseeable future.
With regard to other factors, the trial court noted that each parent had the capacity to give Lesley love and affection and that both parents were in a position to provide a good education for the child. An additional consideration is Mizell's testimony that she would be available when Lesley returned home from school each day, whereas the work schedules of Hargrove and his current wife require that Lesley go to a tutor's house after school three days of the week in Monroe.
The trial court heard testimony over several days and was in a position to observe the demeanor of the witnesses and parents and weigh their credibility. While both parents have flaws, Mizell demonstrated to the trial court that she had been able to provide Lesley with a stable environment during the three years she resided in Glenmora. There is evidence that the child earned very good grades in school, attended church and developed a close relationship with her step-sisters. Mizell's current spouse expressed a willingness to assist her in caring for Lesley. In addition, Hargrove has physical custody of the child for the entire summer and Mizell has cooperated in this situation.
The record contains a factual basis for the trial court's finding that the bizarre events of November 1995 were the result of Mizell's severe depression. The trial court considered and balanced the various relevant factors in determining the best interest of the child. After carefully reviewing the entire record, we cannot say that the trial court clearly abused its discretion in refusing to modify the existing custody arrangement. The assignments of error lack merit.
Hargrove argues the trial court should have completely disregarded Mrs. Mizell's testimony under the principle of falsus in uno, falsus in omnibus. This rule gives the trial judge the discretion to reject the testimony of a lying witness in its entirety if the false statement concerns relevant matters. Ferrantelli v. Wright, 346 So.2d 242 (La.App. 4th Cir.1977). Here, the trial court heard conflicting testimony and weighed the credibility of the parties. We cannot say the trial judge abused his discretion. The assigned error is without merit.
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Paul Hargrove.
AFFIRMED.
Before MARVIN, C.J., and BROWN, WILLIAMS, CARAWAY and PEATROSS, JJ.

*650 ON REHEARING
PER CURIAM.
Among the complaints in appellant's rehearing application is the statement that the opinion "misnamed" an expert witness. We write this per curiam opinion for the limited purpose of correcting the name of this witness. Where the expert is referred to as Dr. Bobby Thompson or Dr. Thompson, the opinion is changed to correctly state the witness' surname as Stephenson.
This correction does not change the result.
The rehearing is denied.