RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0425-MR


JAMES CHRISTOPHER PUSZCZEWICZ                                  APPELLANT


|       | APPEAL FROM JEFFERSON CIRCUIT COURT |
| :---- | :----: |
| v.    | HONORABLE DENISE BROWN, JUDGE |
|       | ACTION NO. 18-CI-503601 |


SAMANTHA FERRIGNO
PUSZCZEWICZ                                                     APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND COMBS, JUDGES.

CLAYTON, CHIEF JUDGE: James Puszczewicz appeals from the findings of

fact, conclusions of law, judgment and decree of the Jefferson Family Court

entered on December 30, 2019. He contends that the family court did not

adequately weigh the evidence and did not properly apply the best interest standard

in ruling that the minor son James shares with his former wife, Samantha, should reside with Samantha in Louisiana during the school year.

James and Samantha were married on February 12, 2010. Their son was born in 2011 and the couple resided together with the child until March 2016, when they separated. The child thereafter resided primarily with Samantha until the summer of 2018, when James began spending considerable amounts of time with him at Samantha's home. He actively parented the child, took him to school and extracurricular activities, and served as his sole caregiver for two weeks when Samantha was out of town traveling for work. At the end of November 2018, Samantha accepted a position at Louisiana State University and informed James she intended to relocate to New Orleans with the child.

On December 18, 2018, James filed a petition for dissolution of marriage in which he sought joint custody and an equal parenting schedule for each parent. He also filed a motion requesting an order to prevent Samantha from removing the child from Kentucky and for temporary sole custody of the child if she did choose to relocate to New Orleans.

Three days later, Samantha filed a petition for an Emergency Protective Order (EPO) on behalf of herself and the child. The petition was based on allegations regarding James which dated from 2016. On the same day the EPO was entered, Samantha immediately relocated with the child to Louisiana and

enrolled him in school there. Samantha did not appear for the hearing on her petition, and it was subsequently dismissed.

On January 7, 2019, James filed a motion for the immediate return of the child to Kentucky. Samantha filed a response and counter-petition for dissolution of marriage requesting sole custody. Following a hearing on February 4, 2019, the family court entered an order on February 7, 2019 granting the parties temporary joint custody of the child, denying James's motion for the return of the child to Kentucky, and granting Samantha's motion to allow the child to remain in school in Louisiana for the spring semester.

The court expressed serious concern regarding Samantha's actions, which it viewed as a deliberate plan to relocate to Louisiana with the child over James's objections and without complying with Kentucky law. The family court also addressed concerns about the parties' alleged drug and alcohol abuse. It noted that James has a history of alcohol abuse and has been working on sobriety since November 2007. James testified that he had been sober since October 2018 and attended Alcoholics Anonymous (AA) meetings daily. James alleged that Samantha uses marijuana. The parties were ordered to submit to drug screens which were both negative. The family court issued a temporary parenting schedule which would allow James liberal unsupervised parenting time with the child for spring break 2019 and the beginning of the summer.

At the end of his school year in May 2019, the child returned from Louisiana to Kentucky and began residing with James. The final hearing on the matter was rescheduled from June 6, 2019 to August 15, 2019. The hearing was then postponed until November 1, 2019 due to Samantha's retention of new counsel. The family court issued an order allowing the child to remain in Kentucky pending the final hearing. The court also appointed a Friend of the Court (FOC) who submitted his report on October 25, 2019.

In preparing his report, the FOC conducted separate interviews with James and Samantha as well as with their child. He was told by Samantha that James was a very successful attorney but he used drugs, including methamphetamines. She reported that the child witnessed some arguing and pushing between his parents. Samantha returned to work because James's law practice was failing, and she became the sole provider for the family. She reported that his longest period of sobriety during the marriage was approximately four months. She expressed concern about his ability to provide a stable home environment for the child as he is currently residing with his brother, sister-in-law, and another male adult. He was employed as a driver for Uber and Lyft.

As to his interview with James, the FOC reported that James told him that Samantha was a heroin user and he began to use with her. They had both battled substance abuse. James admitted that he had attempted recovery numerous

times and that his longest period of sobriety was probably just a few months. He reported that at that time (the date of the interview was September 11, 2019) he had been sober since October 21, 2018. He told the FOC that Samantha had used the period of no contact between him and his son following the EPO petition to move to Louisiana.

The child, who was in second grade at St. Matthews Elementary at that time, told the FOC that he preferred schools in Kentucky to Louisiana. He stated that his preference was to stay in Kentucky because he thought the schools are better but he would not be upset no matter where he had to live as long as he was able to see the other parent regularly. The FOC reported that the child's school records and emails from his teacher show he has appropriate if not exemplary behavior and academic performance, is above grade level in reading and math, and is socially appropriate with his friends at school.

The FOC's report stated that he had "serious concerns regarding the length of Jim's current sobriety and the number of lapses that have occurred for him in the last eleven years." He found that Samantha was the parent who provided the most stability for the child and the parent most often in the caretaking role prior to the move to New Orleans. The report opines that "[t]he fact that [the child] is stable and thriving in both locales would appear to be a testament to the

parenting that Samantha provided during the times in which Jim was unable to parent to the best of his ability or in alignment with his wishes to do so."

In September 2019, the family court rescheduled the final hearing for December 20, 2019. At that hearing, the FOC recommended that the parties should be granted joint custody and the child should be allowed to reside with his mother in Louisiana following the fall school semester. The family court thereafter issued its findings of fact and conclusions of law. It awarded joint custody to James and Samantha and found that it was in the best interest of the child to reside with Samantha during the school year, with liberal visitation for James during school breaks. It explained its decision as follows:

> The court believes both residences and parents are
> appropriate for the child and the child will do well in
> either household. The child is integrated into each home
> and community and has family support in both locations.
> While each parent expressed a desire for the child to
> reside with them, there is no indication the child has a
> preference as to which home he resides in. Normally in
> this situation, the court would enter a shared parenting
> schedule. However, that is not feasible in this case, given
> the parties reside several states apart. Ultimately, the
> court concludes the evidence and testimony presented at
> trial support the position that [Samantha's] home is the
> more stable long-term residence for the child.

James does not challenge the family court's grant of joint custody, but contends that its conclusions as to parenting time and the relocation of the child are not supported by its findings of fact and are not in accordance with the proper legal

standard. He contends the child should reside with him during the school year with Samantha exercising liberal visitation during breaks.

Kentucky Revised Statutes (KRS) 403.270(2) provides that a "court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian." The statute creates a presumption, rebuttable by a preponderance of the evidence, "that joint custody and equally shared parenting time is in the best interest of the child." KRS 403.270(2). The statute provides a lengthy list of factors for the court to consider in determining the best interests of the child.

In reviewing a family court's determination of parenting time, we must be highly deferential and "may reverse it only if it constitutes a manifest abuse of discretion." *Hempel v. Hempel*, 380 S.W.3d 549, 551 (Ky. App. 2012) (citation omitted). "If the factual findings underlying the court's determination are supported by substantial evidence, we may not interfere with the family court's exercise of its discretion." *Id*. (citation omitted).

James's arguments fall into two categories: first, that the family court failed to give sufficient weight to evidence that Samantha sought an unfounded EPO in order to relocate to Louisiana with the child without James's permission; and second, that the family court placed too much weight on the report of the FOC and on James's history of addiction.

James argues that the family court failed to give adequate weight to KRS 403.270(2)(k), one of the statutory factors for assessing the best interest of the child, which requires the court to consider "[t]he likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent[.]" Specifically, he contends that the family court did not give sufficient weight to Samantha's deliberate relocation with the child in the middle of the school year under the false pretext of an EPO petition. In its order of February 7, 2019, the family court criticized Samantha's conduct, stating that her actions caused the court "to question the likelihood that Respondent will allow the child frequent, meaningful and continuing contact with petitioner should she be granted sole custody or named primary residential custodian of the child on a permanent basis. Therefore, the court will be closely monitoring Respondent's actions pending the future hearing on custody and parenting/visitation." James argues that the family court failed to follow up on these concerns and no evidence was presented at the final hearing in December 2019 that would alleviate the family court's earlier apprehension about Samantha's behavior.

James also contests the family court's finding that Samantha's home was the more stable long-term residence for the child. Again, he contends that in making this determination the court failed to consider and give sufficient weight to Samantha's duplicitousness in seeking the EPO for the sole purpose of taking the

child with her to New Orleans in the middle of the school year. By contrast, he points to substantial evidence in the record that he had provided a proper residence, care, and support for the child from May 24, 2019 until the end of the school year in spring 2020 and that the child performed exceptionally while in his care. James also emphasizes that he has always used appropriate legal proceedings to object to the child's removal from Kentucky.

James also criticizes the input of the court-appointed FOC on the grounds that the FOC did not watch the previous hearings conducted in the case and discounted the facts regarding Samantha's behavior regarding the EPO. Further, he argues that the FOC spent insufficient time on the case, spending only one hour in a videoconference with Samantha and not interviewing or investigating any of the family members identified as her support group nor independently verifying any of the information she provided.

Finally, he contends that the only fact supporting the family court's conclusion that Samantha would provide the most stable home for the child was his history of addiction. He contends that the family court's decision runs counter to sound public policy as enunciated in an unpublished opinion of this Court, which stated in a footnote that

> [p]arents should always feel encouraged to seek out
> needed treatment. By receiving appropriate treatment for
> mental health issues, addictive behavior and the like,
> parents are acting in their children's best interests to

become as fit of parents as possible. *See Wyatt v. Wyatt*, 689 So. 2d 1140, 1142 (Fla. Dist. Ct. App. 1997) (footnote omitted) (declining as a matter of public policy to "penalize[ ] an otherwise fit, competent parent for the commendable action of recognizing an addiction to prescription drugs, seeking assistance with, and successfully completing treatment for that problem."); *Hargrove v. Hargrove*, 694 So. 2d 645, 648-49 (La. App. 2 Cir. 1997) (declining to modify custody based on mother's medical condition and episode of depression where mother responded well to voluntary treatment and was considerably improved at the time of her discharge).

*Greene v. Boyd*, No. 2018-CA-000225-ME, 2019 WL 2406718, at *9, n.2 (Ky. App. Jun. 7, 2019), *discretionary review granted* (Sept. 18, 2019), *aff'd*, 603 S.W.3d 231 (Ky. 2020).

James points out that he submitted definitive proof that he had his addiction under control, submitted negative drug screens, and attended AA.

We recognize, as did the family court, that Samantha's behavior in obtaining the EPO in order to relocate to Louisiana with the child without James's permission was highly inappropriate. We also recognize that, as a matter of public policy, parents such as James should not be penalized or discouraged from seeking treatment for addiction for fear of losing custody of their children. Nonetheless, the family court had to resolve a situation in which it could not award equally shared parenting time in accordance with the rebuttable presumption contained in KRS 403.270 because the parents are too geographically distant. The FOC

-10-

testified that but for Samantha's move to Louisiana, he would have recommended equal parenting time. In making this difficult decision, the family court gave greater weight to Samantha's history of providing greater stability in the child's life and to James's lengthy and erratic history of recovery from substance abuse. It gave less weight to Samantha's inappropriate conduct in leaving Kentucky with the child. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). The family court's conclusions are supported by substantial evidence in the record, and it exercised its discretion in full accordance with the statutory directive that "[i]f a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent . . . has with the child and is consistent with ensuring the child's welfare." KRS 403.270(2).

For the foregoing reasons, we affirm the findings of fact, conclusions of law, judgment and decree of the Jefferson Family Court.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Mark G. Hall<br>Louisville, Kentucky | James K. Murphy<br>Ruth J. Wilkerson<br>Louisville, Kentucky |