GUIDRY, Judge.
This is an action to modify a joint custody judgment. The mother, Martha Ellen Williams (formerly Looney), appeals the judgment of the trial court entered June 10, 1987, which altered the joint custody plan of March 2, 1984 stipulated to by the parties, contending the trial judge erred in changing primary physical custody of the two minor children of the parties from the mother to the father.
*729 Plaintiff and defendant were married on May 31, 1975 in Lake Charles, Louisiana, where they established their matrimonial domicile. Two children were born of the marriage: Sylvia Odelle Looney on September 15, 1978, and Sarah Elizabeth Looney on September 7, 1981. Plaintiff and defendant obtained a divorce on November 30, 1983 and entered a consent judgment for the joint custody of their children designating Martha as domiciliary parent during the school year with Robert having the children during the summer, on designated alternating holidays and three weekends out of four during the period Martha was domiciliary parent.
On December 19, 1983, defendant married Hilton Ray Williams (Ray). Shortly thereafter Ray moved to Odessa, Texas, some 700 miles from Lake Charles. Martha and the girls joined Ray in February 1984. Upon discovering the planned move, Robert filed a petition on January 13, 1984, seeking to modify the joint custody decree so as to be named primary domiciliary parent. In response to Robert’s action, Martha filed a reconventional demand seeking sole custody of Sylvia and Sarah. On March 2, 1984, judgment was rendered, again pursuant to stipulation between the parties, maintaining joint custody with Martha as principal domiciliary parent and granting Robert the summer months, designated alternate holidays plus two weekend visits per month during the school year. Under the stipulated plan, the parties were obligated to meet at some designated middle distance point between Robert and Martha’s respective residences for change in extended physical custody periods and once per month for weekend visitations.
In August of 1984, Martha, Ray and the children moved to San Antonio, Texas. This move produced no legal action with visitation and custody periods still being exercised under the March 2, 1984 consent decree. While living in San Antonio, the Williams moved once, in late March or early April 1985. In August 1986, the Williams moved to Temple Terrace, Florida, just outside of Tampa.
Following his unsuccessful attempt to exercise his September 1986 visitation and upon being informed that defendant had elected to tutor his daughters at home rather than enroll them in public school, plaintiff filed a rule to amend the joint custody plan. Plaintiff sought physical custody as domiciliary parent during the school months with defendant exercising physical custody during the summer months. The trial court granted the change in custody sought by plaintiff and defendant appealed.
Defendant-appellant urges trial court error as follows:
1. The trial court erred in granting a change of custody based exclusively on a “best interests” of the child test contrary to the express dictates of the Louisiana Supreme Court in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
2. In the alternative, the trial court erred in ordering a change in custody under the “best interests” rule.
ISSUE NO. 1
Appellant argues that the trial court’s consideration of this case as a first origin of custody case is error and contrary to Bergeron, supra. In Bergeron, the Louisiana Supreme Court enunciated the following rule, which applies to most change of custody cases:
“When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. See Bankston v. Bankston, 355 So.2d 58 (La.App.2d Cir.1978); Languirand v. Languirand, 350 So.2d 973 (La.App.2d Cir.1977). Cf. Unif. Marriage and Divorce Act, 9A U.L.A. § 409 (1979).”
As we pointed out above, the Bergeron rule applies to most change of custody cases, but not all. The application of the rule is limited by the use of the word *730 “considered” in the first quoted sentence. Even though the case before this court is not one of “first origin of custody”, it is one in which no considered decree was ever rendered as both previous judgments in the case affecting custody were entered into by stipulation and consent of the parties. In Sandifer v. Sandifer, 514 So.2d 510 (La.App. 3rd Cir.1987), a panel of this court facing a similar situation stated:
“LSA-C.C. art. 157 directs the courts to look to C.C. art. 146 in considering a change of custody of a child. In order to modify a custody order, there must be a showing of a change in circumstances which materially affects the well-being of the child. The moving party seeking to modify a considered decree of permanent custody bears a heavy burden of proving that the continuation of the existing custody arrangement is so deleterious to the child that removing it from the environment to which it is accustomed is justified. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). However, in the case before us there is no considered decree of custody. The custody plan was agreed to and uncontested by the parties. In this instance the heavy burden of proof traditionally required of the party seeking modification does not apply. Accordingly, the test to be applied is the best interest of the child. Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir.1986) and Deese v. Deese, 387 So.2d 671 (La.App. 3d Cir.1980), writ denied, 393 So.2d 740 (La.1980).” (Emphasis ours).
Thus, the trial judge was correct in applying the “best interests” test in this case.
ISSUE NO. 2
Appellant contends that the evidence was insufficient to justify the change in custody ordered. She argues that plaintiffs chief motive for bringing this action was to preclude Florida, appellant’s current state of residence, from obtaining jurisdiction over the case. She contends that the trial judge based his decision largely upon the testimony of Dr. Patricia Post, a psychologist and former teacher, appointed by the court to interview all concerned parties and who saw her and Ray Williams only one time while meeting with the Looneys on three occasions. She further argues that the record does not support Dr. Post’s conclusion that she and Ray blocked plaintiff's access to the children. Further, appellant urges that the higher scores obtained by Sylvia on the academic achievement tests administered by Dr. Post in comparison to those Sylvia took in the second grade in Texas support the conclusion that home schooling has helped Sylvia academically rather than having retarded her educational growth as found by Dr. Post.
The best interest of the child is the paramount consideration in any custody case. In Owen v. Gallien, 477 So.2d 1240 (La.App. 3rd Cir.1985), a panel of this court commented:
“In determining what is in the best interest of the children, courts must examine all relevant facts. These include, but are not limited to, stability of environment, the standard of living each parent can provide, and the prior history of the children’s custody. Further, it is settled that the father and the mother stand on equal footing at the outset of child custody proceedings and the role of the court is to determine the best interest of the children based on the relative fitness and ability of the competing parents in all respects to care for the children. Ferry v. Ferry, 433 So.2d 359 (La.App. 3rd Cir. 1983); Thornton v. Thornton, 377 So.2d 417 (La.App. 2d Cir.1979); Bentley v. Bentley, 440 So.2d 1362 (La.App. 3rd Cir. 1983).”
The trial court heard the instant matter over the course of three days beginning on December 17, 1986. At the close of evidence, the matter was taken under advisement and the opposing sides were given until the middle of January 1987 to submit memoranda and recommendations concerning the custody of the children.
Written reasons for judgment were not handed down until June 8, 1987. Those reasons stated in part:
“One may question why a Court would take this length of time to make a deci *731 sion with regard to a custody matter. Why mot [sic] render a decision immediately?
In some cases that is possible because the choices are very easy. This is not the everyday situation and this Court takes its responsibility very seriously when it comes to making a decision that may affect the lives of children for years to come.
Before setting pen to paper, this Court reviewed the notes taken by the Court of testimony given and reviewed the cases involving Joint Custody and is of the opinion that the best interest of the minor children, Sylvia Odelle Looney and Sarah Elizabeth Looney, will best be served at this time by making their father, Robert Chapman Looney, the domiciliary parent for the minor children.
It is clear to this Court that both the mother and father love these children and show affection to them. Affection and love are abundant, but the capacity to give this love and affection of all the parties was shown by overwhelming evidence in favor of the father and stepmother. Another factor that must be considered is the continuing educational growth of the minor children and the Court is of the opinion based on the evidence of the Court expert, Dr. Patricia Post, Ph.D., that the children’s educational needs can be best served by having a qualified, trained educator providing the educational needs of the minor children. The Court realizes that one of the factors to consider in Joint Custody decisions is the capacity and disposition of the parties involved to provide the children with food, clothing, medical care, and other material needs. The father and stepmother can provide these needs to a greater extent than the mother and stepfather. This element is not one that the Court gives much weight.
The stability of the children with regard to school, friends and relatives has been very disruptive during the past few years. The Court notes that all of the grandparents of the minor children reside in Lake Charles and there is a good relationship between the children and all of these grandparents.
The Looneys have been married since February of 1984 and are presently expecting a child of this marriage. The family unit seems to be stable and the interaction of the minor children and the step-mother appears to be very good.
There were several things that concerned the Court with regard to the well-being of the minor children that weighed heavily on the Court’s decision. One of the factors that disturbed the Court was the mother’s apparent lack of concern for her daughter’s well-being relative to past incidents relating to sexual abuse within her family. Another factor that was evident from the testimony was that the father and step-mother would facilitate and encourage a close and continuing parent-child relationship between the children and the other parent.”
While the learned trial judge’s reasons do not go into great detail concerning the facts adduced at trial which led him to reach the conclusions stated in his reasons for judgment, those reasons do clearly demonstrate that he considered not only the factors enumerated in La.C.C. art. 146(D) in making his decision but all the testimony adduced at trial.
We have meticulously and painstakingly reviewed the record. That review reveals certain facts which lead us to the following conclusions:
(1) Defendant and her husband only minimally complied with the letter of the joint custody decrees and actively ignored the spirit of these judgments. This conclusion is based upon the fact that defendant failed to provide plaintiff with copies of Sylvia’s grades and attempted to hide from him that Sylvia had not been enrolled in the fourth grade; defendant failed to give plaintiff any advance warning of planned family moves; and, the Williams delayed installing a telephone in their new residence on two separate occasions, even when plaintiff offered to pay for its installation, thereby making telephone contact between plaintiff and his young daughters difficult, if not impossible.
*732 (2) The Williams were unable, whether through happenstance or design, to provide a stable environment for Sylvia and Sarah, i.e., they moved four times within three years resulting in Sylvia, the only child of school age, attending two different schools in both first and second grades; one school in the third grade; and, no school in the fourth grade. Defendant points to Sylvia's improved standardized test scores after only three months of home tutoring for the proposition that home study is superior to public education. Dr. Post, the court’s appointed expert, however, credited the improvement to the use of different tests and the one-on-one testing procedure she employed. We believe the better scores were more likely due to the fact that Sylvia had just completed the only year of her schooling (3rd grade) that was not interrupted by a move. In any case, defendant’s argument failed to convince the trial judge and likewise fails to convince this court that home schooling by a high school graduate is superior to public education.[1]
(3) Over all the girls enjoy a better relationship in the Looney household than in the Williams home. While both Dr. Post and the trial judge recognized that Sylvia and Sarah maintained good relationships with both of their natural parents, they also observed that the relationship between the girls and their step-mother was far stronger than that between the children and Ray Williams. In fact, Dr. Post was of the opinion that the bonding between Libby Looney (plaintiff’s present wife) and the girls was almost as strong as that between the girls and Martha, their natural mother.
(4) The Looneys have demonstrated that they are more willing and able to facilitate and encourage a close and continuing parent-child relationship between Sylvia and Sarah and Martha Williams, their mother. We base this conclusion not only on the opinion of Dr. Post, but also upon several facts in the record — letters entered into evidence from the Looneys to Sarah and Sylvia supportive of the girls’ relationship with Martha and Ray; the Looneys sharing their visitation time with Martha’s relatives; and, the Looneys taking more time to prepare the girls for their changes in custody.
Several other facts in the record are also noteworthy. The majority of Sarah’s and Sylvia’s relatives live in Lake Charles or the surrounding area. Even though the mother, Martha, was primary custodial parent for approximately three years, and there was considerable geographic distance between the father and his children, Robert managed to maintain an extraordinarily close relationship with his daughters by regular, monthly visits and by prudent use of both mail and telephone communication. On the other hand, the record is devoid of any evidence that Martha exercised regular visitation during the summers while the girls were in their father’s custody.
In Bagents v. Bagents, 419 So.2d 460 (La.1982), our Supreme Court explained:
“In performing its function of deciding custody cases, the trial court is vested with a vast amount of discretion. On appellate review, great deference must be accorded to the decision of the trial court, not only because of that court’s better capacity to evaluate witnesses,,but also because of the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973).”
And in Brooks v. Brooks, 469 So.2d 398 (La.App. 3rd Cir.1985), this court stated:
“The best interest of the child is the sole criterion in deciding child custody. La.C.C. art. 146. A trial court’s decision with regard to child custody is entitled to great weight upon appellate review. The trial court “... is in a better position to evaluate the best interests of the children from his total overview of the conduct and character of the parties and the *733 children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof.” (citations omitted). Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971).”
It is evident that the learned trial judge based his decision on his conclusions that the Looneys were better equipped to offer the children, Sarah and Sylvia, a fully rounded, quality education; on the fact that the Looney home, which has always been in Lake Charles would provide Sylvia and Sarah a more stable environment; and, on his belief that the Looneys would nurture the development of strong family ties by the girls on both the maternal and paternal sides.
We find no clear showing by appellant, based on the record before us, that the trial judge abused his much discretion. Accordingly, the judgment appealed from is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.

. When Martha Williams (who is a "C” average high school graduate) was questioned as to why she preferred home schooling to public education for her children, she stated that it was her belief that "there is an element of Satanism in our public schools" and that the Department of Education and the National Education Association were not striving to educate the nation’s children to be doctors, lawyers and scientists but rather were endeavoring "... to make them ... those who labor and follow directions”.