637 So.2d 607 (1994)
Lane Keith BARNES, Plaintiff and Defendant-in-rule and Appellant,
v.
Vivian Diane CASON, Defendant and Plaintiff-in-rule and Appellee.
No. 25808-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
*608 Rankin, Yeldell, Herring & Katz by Charles E. Herring, Jr., Bastrop, for appellant.
Jack F. Owens, Jr., Harrisonburg, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Lane Keith Barnes, appeals from a trial court judgment granting joint custody of the parties' three children and designating the defendant, Vivian Diane Cason, as the primary domiciliary parent. We reverse the trial court judgment, award primary domiciliary parent status to the plaintiff, and remand for formulation of a joint custody implementation plan between these parties.

FACTS
The plaintiff and defendant lived together for several years before their marriage. During that time, two children were born. Karolyn Jean Barnes was born on October 3, *609 1987, and Travis Roy Barnes, a/k/a Jonathan Stein Cason, was born on July 20, 1989.[1]
The parties married on December 13, 1989. The defendant left the plaintiff in January, 1990, taking the children with her. She obtained a divorce in Arkansas in 1990. The divorce judgment stated that no children were born of the marriage and made no provision for the custody of Karolyn and Travis.
On December 11, 1990, after their divorce, the defendant and the two children returned to live with the plaintiff in Concordia Parish. The parties lived together until July 26, 1991, when the defendant again left with the children. The plaintiff was not aware that when the defendant left, she was pregnant with their third child.
On October 4, 1991, pursuant to a petition filed by the plaintiff in Concordia Parish, a joint custody decree was entered. The judgment named the defendant as the primary domiciliary parent and established a visitation schedule for the two children. The custody plan did not include the third child who had not yet been born.
On April 2, 1992, the defendant gave birth to a third child, Caitlyn Danielle Cason. The plaintiff is also the father of this child.
In early September, 1992, the defendant arrived at the plaintiff's home at 2 a.m. with the two older children and left them with him. The children were tired, dirty, thin, and not well cared for. The defendant brought no clothing for the children. The baby, Caitlyn, was left with the defendant's mother.
On January 11, 1993, the plaintiff filed suit to have the joint custody decree from Concordia made executory in Morehouse Parish, where he was then living. He also filed a rule to change the joint custody decree. The plaintiff was joined in his petition for change of custody by his mother, Carolyn Barnes, and by the defendant's mother, Jean Cason. The petition sought to have sole custody of the three children awarded to the plaintiff, or, in the alternative, to award joint custody, with the plaintiff as the primary domiciliary parent. In the further alternative, the petitioners sought to have the court grant sole custody of the two older children to the paternal grandmother, Carolyn Barnes, and custody of Caitlyn to her maternal grandmother, Jean Cason.
In the petition seeking a change of custody, numerous allegations were made regarding the unfitness of the defendant and the reasons why a change of custody would be in the best interest of the children. The following allegations were made. The plaintiff had physical custody of the two older children for seven months prior to filing the petition for change of custody while Jean Cason had physical custody of Caitlyn from September through December, 1992. In December, the defendant took the baby back into her physical custody. The defendant had a habit of disappearing and leaving the children with the plaintiff. The defendant had an unstable lifestyle and had lived with several men to whom she was not married, when she had the children in her physical custody. One of these men was subsequently convicted of drug charges. The defendant neglected the physical needs of the children and physically abused them. The defendant is emotionally unstable, has not maintained steady employment, and has sometimes concealed the whereabouts of herself and the children. The plaintiff also alleged that the defendant once threatened to give the youngest child, Caitlyn, to a boyfriend and then commit suicide on her twenty-first birthday.
A hearing on the rule for change of custody was held on March 22, 1993. Following the hearing the trial court handed down written reasons for judgment. The trial court found that "both parents have made some important mistakes" but that both were fit to have custody of the children. The court denied the request for custody by the grandmothers and found that the presumption in favor of joint custody had not been rebutted.
The court found that even though the defendant had experienced some difficulties in *610 her past, at the present time she had remarried and was living in a stable environment and was employed. On this basis, the trial court awarded the parents joint custody of all three children and named the defendant as the primary domiciliary parent. A judgment to this effect was signed and filed on July 26, 1993.
The plaintiff appealed the trial court judgment. He argues that in awarding custody, the trial court failed to consider the factors listed under LSA-C.C. Art. 131. He also contends that the trial court based its opinion on a misunderstanding of the facts and consideration of inappropriate factors. In essence, the plaintiff argues that the judgment of the trial court granting joint custody and naming the defendant as the primary domiciliary parent is manifestly erroneous and clearly wrong and therefore not entitled to deference by this court on appeal.

LEGAL PRINCIPLES
Custody of children after divorce is regulated by LSA-C.C. Art. 134 and, by reference, LSA-C.C. Art. 131.[2] LSA-C.C. Art. 131(C) provides that there shall be a rebuttable presumption that joint custody is in the best interest of a minor child. See also Yelverton v. Yelverton, 621 So.2d 36 (La. App.2d Cir.1993). LSA-C.C. Art. 131(C)(2) provides that the presumption in favor of joint custody may be rebutted by showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to several factors listed in the statute. Yelverton v. Yelverton, supra.
Those factors include:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
The paramount consideration in a change of custody case is always the best interest of the child. Odom v. Odom, 606 So.2d 862 (La.App.2d Cir.1992), writ denied 608 So.2d 153 (La.1992).
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. Looney v. Looney, 536 So.2d 728 *611 (La.App. 3d Cir.1988); Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Smith v. Smith, 615 So.2d 926 (La.App. 1st Cir.1993), writ denied 617 So.2d 916 (La.1993); Cooper v. Cooper, 579 So.2d 1159 (La.App.2d Cir.1991).
A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. By contrast, a judgment with a custody plan that was entered by default, was not contested or was entered merely by the consent of the parties is not a considered decree. Odom v. Odom, supra. If the record is silent as to whether the issue of custody has previously been litigated, the courts presume that the prior decree was uncontested and is not a "considered" decree. Odom v. Odom, supra. Where the original custody decree was by stipulation of the parties, it is not a considered decree. Peyton v. Peyton, 614 So.2d 185 (La.App. 3d Cir.1993).
If a judgment is not a considered decree, the "heavy burden" rule does not apply. In such cases, a party seeking to modify the custody arrangement must prove a change in circumstances and that the new custody arrangement would be in the best interest of the child. Cooper v. Cooper, supra; Odom v. Odom, supra.
In determining the best interest of a child in a custody case, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented. Windham v. Windham, 616 So.2d 276 (La.App.2d Cir.1993), writ denied 620 So.2d 875 (La.1993). It is well settled that stability of environment is a factor to be taken into account in determining what is in the best interest of the child. Smith v. Smith, supra; Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir.1988), writ denied 528 So.2d 565 (La. 1988); Draper v. Draper, 556 So.2d 210 (La. App.2d Cir.1990); Pahal v. Pahal, 606 So.2d 1359 (La.App.2d Cir.1992).
A trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. Smith v. Smith, supra; Yelverton v. Yelverton, supra; Draper v. Draper, supra.

DISCUSSION
Joint custody was originally awarded to plaintiff and defendant, with the defendant, Ms. Cason, named as the primary domiciliary parent. That judgment was rendered on October 4, 1991 in Concordia Parish. The judgment specified that it was based upon "the stipulation agreements of the parties." There is nothing in the record to indicate that evidence was adduced as to the fitness of either party to have custody of the children. Further, this custody decree made no provision for the parties' youngest child, Caitlyn, who was not born at the time the judgment was rendered. Therefore, the original decree granting joint custody to these parties was not a "considered" decree and the heavy burden of Bergeron v. Bergeron, supra, does not apply. In evaluating whether the joint custody decree of October 4, 1991, should be modified in this case, the standard is whether the plaintiff proved a change of circumstances materially affecting the welfare of the children since the original decree and that the modification sought is in the best interest of the children.
The plaintiff testified that after the original joint custody decree was rendered in 1991, his visitation with Karolyn and his son went smoothly for a short time. Then the defendant left with the children and did not inform him of their whereabouts. He testified that he and the defendant reconciled briefly and then separated again. At that time, the defendant was pregnant with the third child, Caitlyn, but did not inform the plaintiff of this when she left and took the children with her.
When Caitlyn was born in April, 1992, the two older children stayed with the plaintiff and remained with him until near the end of the summer of 1992. The children remained with the defendant for a short time. Then, in September, 1992, the defendant arrived at the plaintiff's home at 2:00 a.m. with the two older children and asked him to keep them. The children were tired and dirty and were thin, indicating they had not been properly fed. The plaintiff testified that the children were not wearing adequate shoes and that *612 the defendant brought no clothing for the children, nor did she furnish him with birth certificates or immunization records.
The plaintiff testified that he and the children then moved in with his mother, Carolyn Barnes, who has a two bedroom home. Mrs. Barnes lives in Bastrop, Louisiana, a short drive from the plaintiff's employment in Arkansas. Mrs. Barnes is a nurse and she and her son have arranged their work schedules to accommodate caring for the children.
The plaintiff also testified that on December 25, 1992, he, the defendant and the children were at the maternal grandmother's home for a Christmas celebration. Late in the evening the defendant announced that she was leaving with all three children. The plaintiff stated that the oldest daughter, Karolyn, became hysterical at the prospect of leaving with her mother. The defendant demanded that the children be allowed to go with her, even though the plaintiff was still entitled to have the two older children for visitation under the joint custody implementation plan.
The defendant's mother, Jean Cason, testified that while her daughter had physical custody of all three children, they did not always appear to be adequately nourished. She also testified that she once saw the defendant bite Karolyn on the arm and has frequently seen her spank the children too severely. Mrs. Cason testified that at one point she visited her daughter in Tioga, Louisiana, where she and the children had moved to live with a boyfriend. Mrs. Cason testified that the oldest child, Karolyn, had a strained relationship with the defendant and the child was frequently sad.
Mrs. Cason testified that in November, 1992, the defendant brought the baby, Caitlyn, to her to keep for awhile. Mrs. Cason stated that the child, who was then seven months old, was unable to sit up, did not eat baby food and did not recognize her name. Mrs. Cason testified she thought at one point the child might be deaf because she did not respond to sound. However, after Mrs. Cason began caring for the child, Caitlyn learned to sit up in a high chair, eat baby food and respond to stimuli around her.
Mrs. Cason testified that on Christmas Day, 1992, Karolyn did not want to be near the defendant. When the defendant attempted to take all three children back into her physical custody, Karolyn became hysterical. On that occasion, the defendant was very upset and threatened to commit suicide on her 21st birthday. Mrs. Cason testified that her daughter has not provided a stable environment for the children and that the children are happier and healthier with their father, the plaintiff, who is able to provide them with a more stable home.
Jennifer Sharp, the defendant's sister, testified that at one point the defendant lived in Arkansas with a man who is currently in prison for a drug offense. Ms. Sharp testified that her sister is not able to provide a stable home for these children.
Pat Meriweather, a clinical social worker, testified as an expert on behalf of the plaintiff. She stated that she had seen the two older children, the plaintiff and both grandmothers. She testified that the children were independent of others but were very helpful toward each other, a sign often found in children who have not received sufficient nurturing. She stated that Karolyn, then five years old, stated that her mother frequently left her and her brother with baby sitters whom she described as "mean." Karolyn also stated that she was primarily responsible for getting her own food because her mother "likes to sleep." The child stated tearfully that her mother "don't take care of us and sometimes she don't hardly feed my baby brother." Karolyn expressed extreme concern over the well-being of the baby, Caitlyn.
Karolyn also stated that her mother once slapped her when she said she wanted to be with her father. The child said that she cried frequently while living with her mother but doesn't cry much at all living with her father.
The boy, Travis, was three years old at the time of the interview. He indicated to Ms. Meriweather that he was responsible for feeding himself while living with his mother and that he preferred to live with his father. He stated that since he has been living *613 with his father, his mother has not contacted him and he does not know where she is.
Ms. Meriweather stated that while living with the defendant, the children had no concept of a routine and that the mother did not provide a stable environment for the children. Ms. Meriweather stated that the children did not appear to have been coached as to what to say during their interview with her.
Ms. Meriweather testified that the children have a positive emotional relationship with their father, that the father should have custody of these children and that the grandmothers should play an active part in their lives. She also stated that the defendant should see the children as frequently as possible.
The defendant testified that after her initial separation from the plaintiff, she and the children lived in Jonesville, Louisiana. The plaintiff visited the children according to the visitation plan. At that time, the defendant was attending beauty school. She then moved to Tioga, Louisiana, with the children, without informing the plaintiff. She and the children moved in with a boyfriend, even though the joint custody implementation plan prohibited such behavior. After three months, she and the children went to Pineville and moved in with Lisa Leavins, a woman who also had three children living with her. The defendant worked as a cocktail waitress at a local hotel and left the children with babysitters while she worked at night. The defendant admits that in September, 1992, she left the older children with their father with no clothes, medical records or means of getting in touch with her. In November, 1992, she left Caitlyn with her mother.
The defendant testified that on January 23, 1993, she married Ben Fair, whom she had known for only one month. She and Caitlyn then moved to Lafayette to live with Mr. Fair, who is a sophomore at the University of Southwestern Louisiana. They live in a two bedroom apartment in student housing at the University. Mr. Fair is a paraplegic and has been paralyzed from the chest down for 11 years. The defendant claimed that a few days before the hearing, she secured employment at a fast food restaurant. She stated that Mr. Fair cares for Caitlyn while she works from 6:00 a.m. to 2:00 p.m. At the time of the hearing, Mr. Fair had never met the two older children.
The defendant acknowledged that the plaintiff was a good father and treats the children well.
Lisa Leavins, with whom the defendant lived for three to four months, testified that the defendant was a good mother and took good care of the children.
Barbara Landry, an acquaintance of the defendant, testified that the defendant and her new spouse have a two bedroom apartment in Lafayette which would be adequate for three children. Ms. Landry stated that she has never seen or observed the defendant with the two older children.
In this case, the trial court, in its reasons for judgment, set forth at length the evidence and testimony adduced at the hearing, little of which favored the defendant, Vivian Diane Cason. The trial court continued the prior joint custody award with Ms. Cason as the primary domiciliary parent. Some minor modifications were made regarding visitation rights. In its reasons for judgment, the trial court makes much of the fact that at some point while they were together, the plaintiff and defendant engaged in various altercations. The trial court further condemns the plaintiff for failing to pay child support, discounting the uncontradicted testimony that child support was not paid during episodes during which Ms. Cason concealed her whereabouts and that of the children from the plaintiff. The trial court then states that the defendant was wrong to have moved in with her boyfriend along with the children but excuses this behavior because the boyfriend supported the defendant and children when she was not getting child support. There is no evidence in the record upon which to base the statement that the defendant's boyfriend supported her and the children.
The trial court also found that because the defendant had remarried, she now has a stable environment in which to raise the children. The record does not support this finding. *614 At the time of the hearing, the defendant had been married for two months to a man she had known for one month prior to the marriage. Further, the defendant's new husband, a paraplegic, would be responsible for the care of these three children from 6:00 a.m. until 2:00 p.m. while the defendant worked. At the time of the hearing, the defendant's new spouse had never even met the two older children, Karolyn and Travis.
In reasons for judgment, the trial court also referred to the incident that occurred on Christmas, 1992, where the defendant sought to take all three children back into her physical custody and the plaintiff refused. However, the clear terms of the joint custody agreement in force at that time specified that the plaintiff was to have custody of the older children during the Christmas holiday until 6:00 p.m. on the day before school resumed.
We find that, based upon the facts of this case, and in light of the factors set forth in LSA-C.C. Art. 131, the trial court judgment, granting joint custody and naming the defendant, Vivian Diane Cason, as the primary domiciliary parent, was clearly wrong, manifestly erroneous and constitutes an abuse of discretion.
Viewing the evidence and testimony in the record as a whole, it is clear that the defendant has a pattern of neglecting these children, denying them adequate food, clothing and nurturing. There is also evidence that the defendant's behavior toward the children is somewhat harsh, particularly regarding Karolyn. Most importantly, the defendant has utterly failed to provide these children with a stable environment. The defendant has moved frequently, often to keep the children away from their father. At other times, she has arrived on the doorstep of the plaintiff or that of her own mother, in the middle of the night, to leave the children, or in the case of Caitlyn, to take her back into her own physical custody. The defendant's two month marriage to an individual she barely knows and her employment of only a few days duration does not indicate that she has established the stable lifestyle that these children require.
On the other hand, the father has a stable home with his mother where the children are adequately fed, clothed, educated and nurtured. Further, while living with the father in Bastrop, these children also have contact with their maternal grandmother and other members of the mother's family.
While we do not feel at this time that the presumption in favor of joint custody has been rebutted, we do feel that the trial court erred in naming the defendant as the primary domiciliary parent.

CONCLUSION
For the reasons stated above, we reverse the trial court judgment. We award joint custody of Karolyn Jean Barnes, Travis Roy Barnes aka Jonathan Stein Cason, and Caitlyn Danielle Cason, to the plaintiff, Lane Keith Barnes and the defendant Vivian Diane Cason. We name the plaintiff, Lane Keith Barnes, as the primary domiciliary parent. The case is remanded to the trial court for formulation and implementation of a joint custody plan with provisions for visitation by the defendant. All costs are assessed to the defendant.
REVERSED AND REMANDED.
NOTES
[1] At the time of their son's birth, the parties agreed to name the child Travis. However, for some reason, a birth certificate was not immediately issued. Some months later Ms. Cason unilaterally changed the child's name to Jonathan.
[2] We recognize that LSA-C.C. Art. 131, et seq. has been revised by Acts 1993, No. 261, § 1. However, the effective date of the revision is January 1, 1994. Judgment in the present case was rendered on July 26, 1993, prior to the effective date of the revision. Therefore, the law, as it existed at the time of the rendition of the judgment in this case, will be applied.