647 So.2d 414 (1994)
David Eugene BOYD, Plaintiff-Appellee,
v.
Kellye Denise Sanderson BOYD, Defendant-Appellant.
No. 26292-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
*415 Dennis G. Stewart, Rayville, for appellant.
L. Douglas Lawrence, Bastrop, for appellee.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The appellant/mother, Kellye Denise Sanderson Boyd, appeals from a trial court judgment granting joint custody of her three-year-old son under a plan that allows the appellee/father, David Eugene Boyd, a convicted drug felon, to have physical custody of the boy for a period of five consecutive months each year. For the reasons assigned below, we modify the trial court judgment, and award primary domiciliary parent status to the mother for the entire year. We remand for formulation of a joint custody implementation plan between these parties and recomputation of child support.

FACTS
The parties were married in 1987. Thereafter, in about 1988, they were both arrested on felony charges of distribution of marijuana.[1] Mrs. Boyd pled guilty to possession of marijuana, a misdemeanor. Mr. Boyd was tried and convicted on two counts of distribution of marijuana. While he was in prison, Mrs. Boyd gave birth to the only child of their marriage, David Tyler Boyd (DOB 11/17/90).
Following Mr. Boyd's release from prison on parole (when the child was about six months old), the couple resumed living together. However, they separated in 1992. Mr. Boyd filed a petition for divorce in September 1992, in which he requested that the parties be awarded joint custody of the child with the mother being the primary domiciliary parent.
However, in her answer, Mrs. Boyd sought sole custody with restrictions upon the father's visitation rights (no overnight female guests, consumption of alcohol, or association with convicted felons in the presence of the child). In her petition, she contended that Mr. Boyd was a convicted felon who had violated his parole by keeping a firearm, frequenting bars, consorting with other convicted felons, and consuming alcohol, as well as controlled dangerous substances. She also alleged that he was engaged in an adulterous relationship.
Thereafter, Mr. Boyd amended his petition and requested sole custody with only supervised visitation for the mother. He contended that Mrs. Boyd was morally unfit and did not have a good relationship with her own parents.
The divorce was granted in February 1993. After unsuccessful mediation, the trial to determine custody and child support was held in August 1993.
At the custody hearing, Mr. Boyd testified that for several months he had been living with a woman to whom he was not married. He repeatedly invoked his right against self-incrimination under the Fifth *416 Amendment when questioned as to conduct which would constitute violations of the terms of his parole, i.e., his current drug and alcohol usage, his patronage of bars, his association with other convicted felons, and his ownership of firearms since his release on parole.[2]
Mr. Boyd requested sole custody of the child with Mrs. Boyd's visitation being supervised by her parents, even though he claimed that she was estranged from them. He testified that he decided to ask for sole custody because of the child's behavior ("he cusses a lot for a little two-year-old"). He also testified that the child did not want to go with his mother when she picked him up. The father testified that if the child lived with him he would have his own bedroom. He also admitted that he had taken the child to see the maternal grandfather on numerous occasions, even though he knew the mother objected, and stated that he would continue to do so.
Mrs. Boyd presented the testimony of Dianne Phillips, a licensed professional counselor who was qualified as an expert in family counseling. She testified that she saw the mother and the child on July 21, 1993, and observed no inappropriate behavior. Based on her observations, she concluded that the mother was a very caring and nurturing parent, and that the child's behavior did not indicate he had been left alone for long periods of time (as contended by the father). She also observed that there was evidence of trust and bonding between mother and child. Ms. Phillips noted that Mrs. Boyd expressed concern about statements made by the child indicating that he had observed sexual acts between the father and his paramour; however, the counselor was unable to reach any conclusions about this matter.
Several witnesses testified that they had seen Mr. Boyd in bars since his release from prison on parole. Additionally, the maternal grandmother testified that she visited her daughter's one-bedroom apartment frequently and that it was clean. She also contradicted Mr. Boyd's testimony that she and her daughter were estranged.
The 23-year-old mother testified that she did not want the maternal grandfather around the child because of his excessive drinking. (On one occasion, the man had even given her young child some whiskey in her presence.) However, Mrs. Boyd testified that the child had a good relationship with her stepfather and considered him to be his grandfather.
The trial court issued written reasons for judgment in which it found joint custody to be in the best interest of the child. However, the court specifically held that joint custody would not continue to be in the child's best interest if the father continued to violate the terms of his parole and, in that event, sole custody would be awarded to the mother. The court directed that the mother have primary physical custody from April to October, with the father having primary physical custody from November to March, when his work activities as a farm laborer would be minimal.
The trial court also established visitation for the parent not having primary physical custody and set child support. Judgment in conformity with the written reasons was signed on October 25, 1993; the incorporated joint custody plan also ordered the father not to leave the child alone with the maternal grandfather.
Mrs. Boyd appealed. She contends that the trial court erred in not awarding her sole custody or designating her as primary domiciliary parent for the entire year, subject to the father's reasonable visitation.

LAW
Custody of children after divorce is regulated by LSA-C.C. Art. 134 and, by reference, LSA-C.C. Art. 131.[3] LSA-C.C. Art. *417 131(C) provides that there shall be a rebuttable presumption that joint custody is in the best interest of a minor child. See also Barnes v. Cason, 25808 (La.App. 2d Cir. 5/4/94) 637 So.2d 607. LSA-C.C. Art. 131(C)(2) provides that the presumption in favor of joint custody may be rebutted by showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to several factors listed in the statute. Barnes, supra.
Those factors include:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
The paramount consideration in rendering a child custody determination is always the best interest of the child. Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir. 1993), writ denied, 620 So.2d 875 (La.1993).
In determining the best interest of a child in a custody case, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented. Barnes, supra; Windham, supra. It is well settled that stability of environment is a factor to be taken into account in determining what is in the best interest of the child. Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir.1988), writ denied, 528 So.2d 565 (La. 1988); Pahal v. Pahal, 606 So.2d 1359 (La. App. 2d Cir.1992).
When the court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody. All that is mandated by the legislative scheme is a substantial equality of time. Windham, supra; Pahal, supra; Christian v. Christian, 535 So.2d 842 (La.App. 2d Cir.1988); Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir. 1984). Each case will depend on the child's age, the parents' situations, and other factors relevant to a particular child custody dispute. Brazan v. Brazan, 93-2369 (La.App. 1st Cir. 6/24/94), 638 So.2d 1176.
The purpose of a custody determination is not to punish a parent for any past misconduct; it is rather to serve the best interests of the children of the marriage. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980).
The fact that one parent is better off financially and can provide a better home and a larger degree of material benefits is *418 not a factor for consideration where the other home is adequate. Bailey, supra. Moreover, the non-domiciliary parent has the obligation to provide a level of support equal to that available if the child were housed in the residence of the non-domiciliary parent. Bailey, supra.
A trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. Barnes, supra.

DISCUSSION
Mrs. Boyd contends that she should be awarded sole custody or be designated primary domiciliary parent for the entire year, subject to the father having reasonable visitation. She maintains that the father's ongoing parole violations and relationship with his paramour render him unfit to have custody. She also asserts that she has been the only stable influence in the child's life. If this court alters the custody decree as requested, she seeks a corresponding increase in child support.
In his brief, Mr. Boyd contends that the mother is guilty of the same misconduct of which she accuses him, having been arrested at the same time he was. He also asserts that since the hearing he has married his paramour. Although Mr. Boyd testified that he and the paramour were to marry in a few weeks, evidence of the marriage was not before the trial court. See and compare Pahal v. Pahal, supra.
Additionally, although Mr. Boyd would have this court draw a positive inference from the mere fact of his alleged marriage, we note that the paramour herself was not called to testify. Thus, there is virtually no information in the record concerning her or her fitness to help care for the child.
The record demonstrates that Mrs. Boyd has in fact been the only stable influence in the life of the child, who has been in her constant care since birth. Although Mr. Boyd participated in the care of the child in a limited fashion after his release from prison and before the parties' separation, the child remained in his mother's care after the separation, subject to the father's visitation. There is no evidence in the record to demonstrate that the present home life has been detrimental to the child in any fashion.
To the contrary, Ms. Phillips, the family counselor, testified that the child was normal and well adjusted for his age and that he had a trusting relationship with his mother. She also characterized Mrs. Boyd as a caring and nurturing parent. This observation was further confirmed by the testimony of the maternal grandmother, a frequent visitor to Mrs. Boyd's home. She testified that her daughter took good care of the child, who always appeared well-nourished, well-dressed and happy.
Although Mr. Boyd attempted to portray the mother in an unflattering light by alleging that she left the child alone for extended periods of time, even overnight, and that her residence was unclean, the evidence in the record does not support these claims. At trial, he also complained because the mother did not want the child exposed to her biological father and she wanted the custody plan to provide for advance notification as to when Mr. Boyd wished to exercise certain visitation rights (the extended summer visitation and alternative days if work required him to miss his scheduled weekend visitation). Under the facts of this case, we find nothing unreasonable in Mrs. Boyd's positions on these two issues. In her testimony, she established that she had valid concerns about the maternal grandfather and his excessive drinking. Furthermore, she is entitled to reasonable notice before non-scheduled visitation in order to arrange both her schedule and that of the child.
As to Mr. Boyd's argument that he can provide the child with a better residence because he still has the three-bedroom family home, we find that the mother's residence is adequate. Additionally, Mrs. Boyd testified that she had already taken steps to secure a larger apartment for herself and the child as soon as one became available in their present apartment complex.
The most disturbingand crucial aspect of this case is the trial court's finding that Mr. Boyd was violating the terms of his parole, on a continuing basis, by indulging *419 in such activity as possessing a firearm, consuming alcohol and illegal drugs, frequenting bars, and consorting with other known felons. Such conduct can only be viewed as detrimental to the child, and we are forced to conclude that it rendered the father unsuitable to have custody of the child for the extended period established by the trial court.
Mr. Boyd contends that the mother also participated in similar conduct or condoned his behavior. (The only allegation against Mrs. Boyd was that she had gone to bars.) However, we note that Mrs. Boyd was not subject to, nor required to comply with, the terms of her husband's parole. Also, Mrs. Boyd testified that she tried to prevent him from going to bars; one of her witnesses corroborated this, testifying that on at least one occasion Mrs. Boyd tried to persuade her husband to leave a bar but he refused. Mrs. Boyd also testified that one of the reasons she finally left her husband was because she realized that his conduct was not in their child's best interest.
Furthermore, the record does not contain any specific facts concerning the original criminal charges against either parent or their respective degrees of culpability. All the record shows is that Ms. Boyd pled guilty to a misdemeanor offense, while her husband was tried and convicted on two felony charges. Although Mr. Boyd's testimony under direct examination inferred that he was actually innocent, on cross-examination he conceded that he no longer maintained his innocence of the charges.
Finally, we note that the mother lives in Oak Grove, which is in West Carroll Parish, while the father lives in Bastrop in Morehouse Parish. As a practical matter, this fact will eventually render the split custody arrangement ordered by the trial court unworkable because it would require the child, who will soon be of age for kindergarten, to change school twice per school year.
While we are unwilling at this time to hold that the presumption in favor of joint custody has been rebutted, we find that the trial court abused its discretion and was clearly wrong in failing to designate Mrs. Boyd as the primary domiciliary parent for the entire year. In view of the father's serious misconduct, we cannot find that the custody arrangement ordered by the trial court would be in the best interest of this child, who has lived with his mother his entire life.

CONCLUSION
For the reasons stated above, we modify the trial court judgment. We award joint custody of David Tyler Boyd to the appellant Kellye Denise Sanderson Boyd and the appellee David Eugene Boyd. We name the appellant Kellye Denise Sanderson Boyd as the primary domiciliary parent for the entire year. The case is remanded to the trial court for formulation and implementation of a joint custody plan with provisions for reasonable and liberal visitation by the appellee, as well as recalculation of child support. All costs are assessed to the appellee.
MODIFIED AND REMANDED.
NOTES
[1] The record in this proceeding does not clearly establish the dates pertaining to the criminal charges.
[2] A negative inference may be drawn against a party to a civil case who asserts his Fifth Amendment privileges. See Economy Auto Salvage, Inc. v. Allstate Insurance Company, 499 So.2d 963 (La.App. 3d Cir.1986), writ denied, 501 So.2d 199 (La.1986), citing Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).
[3] The articles concerning child custody, LSA-C.C. Art. 131, et seq., were amended by Acts 1993, No. 261, § 1. These amendments did not become effective until January 1, 1994, after judgment in this case was rendered on October 25, 1993. Therefore, the law, as it existed at the time of the rendition of the judgment in this case, will be applied.