665 So.2d 648 (1995)
Gary V. EVANS, Plaintiff-Appellant,
v.
Mary DeVaughn TERRELL, Defendant-Appellee.
No. 27615-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1995.
Rehearing Denied January 18, 1996.
*649 Richard Z. Johnson, Jr., Mansfield, Lewis O. Sams, Coushatta, Kenneth Rigby, Shreveport, for Appellant.
Gary Fox, Shreveport, for Appellee.
Before NORRIS, BROWN and WILLIAMS, JJ.
WILLIAMS, Judge.
In this child custody action, petitioner Gary Evans appeals a judgment awarding physical custody of his minor son to both him and the maternal grandparents, and allowing supervised visitation by the child's mother, defendant Mary Terrell. For the following reasons, we amend, affirm and remand with instructions.

FACTS
The plaintiff, Gary V. Evans, a married man, and the defendant, Mary DeVaughn Terrell, a single woman, are the parents of a child, Timothy Tyler Evans, ("Tyler"), born on August 10, 1990. Evans executed an acknowledgment of paternity and is named as the father on Tyler's birth certificate. Evans has financially supported the child since birth, and paternity is not an issue in this proceeding.
At some time in 1994, problems arose in the relationship between Evans and Terrell. Consequently, Evans filed a petition for sole custody of the minor child, alleging that Terrell frequently interfered with his access to the child, and that she had physically and verbally abused Tyler. According to Terrell's testimony, her decision to break off the affair prompted a "violent" confrontation with Evans. For that reason, she was afraid to let him visit Tyler. Several interim judgments were issued in August and September 1994, prior to the trial on the merits. These judgments set forth custodial arrangements and visitation schedules pending further orders of the court.
In August 1994, the trial court appointed Dr. Millard Bienvenu, of Northwest Counseling Services, to perform an evaluation of the parties and the minor child. At a hearing held in November 1994, Dr. Bienvenu concluded that an injury was inflicted on Tyler. However, he did not make a determination regarding child abuse. He testified that Terrell admitted that she gave the child a severe whipping in May 1993. Dr. Bienvenu recommended a "temporary time sharing" between the father and maternal grandparents, with the mother visiting Tyler in the grandparents' home.
Evans testified that he noticed marks and bruises on Tyler in May 1993. When asked what happened, the boy answered that his mother whipped him with a belt because he would not take his medicine. According to Evans, the couple argued and Terrell agreed to seek counseling, but never attended. Evans also stated that he saw Terrell push and physically shake Tyler. The child also suffered from ear infections and was seen by Evans' brother, Dr. Jeffrey Evans, who found a hearing loss. Dr. Evans referred Tyler to Dr. Judd Chidlow in Shreveport. Dr. Chidlow reported that Tyler had chronic recurrent tonsillitis and adenoiditis, with serious otitis media and conductive hearing loss in the right ear. Evans further testified that in May 1994, he and his wife discovered and videotaped new marks and bruises on Tyler's body.
Tyler was also seen by Dr. Edward Gustavson, a specialist in pediatric medicine on the staff of LSU Medical School. Dr. Gustavson testified that he examined Tyler and found fluid in each ear, a burn on the back of his hand and numerous bruises on his body. Dr. Gustavson opined that Tyler's ear problems had been improperly treated and that the burn on his hand, which showed scarring of a deep burn, could not have been caused *650 by an iron falling accidentally. Dr. Gustavson also reviewed the videotape and stated that a linear, wide mark across Tyler's chest was quite typical for a bruise from a belt. He also pointed out that the multiple bruises on the child's lower extremities seemed to be the imprint of fingertips, caused by very forceful grabbing. Dr. Gustavson testified that the bruises were not normal for a child of Tyler's age and indicated physical abuse.
Dr. Bruce McCormick, a psychologist, testified that Tyler had informed him that Terrell's boyfriend, Jerry, had whipped him with a big black belt. Tyler also told Dr. McCormick that he was afraid of Jerry. In response to the trial court's questions, Dr. McCormick stated that he did not find that Tyler suffered from battered child syndrome. Jeanne Ewing, a board certified social worker, evaluated Tyler and interviewed Evans, his wife and Terrell. She described herself as an advocate for the child. Ms. Ewing testified that the child told her that he did not have a bed at his mother's house. When Jerry was there, Tyler slept on the floor because the bed moved too much and he did not like that. Ms. Ewing also testified that Tyler described being whipped by his mother and Jerry.
Terrell testified that she did not cause the bruises on Tyler's body and that she did not know how they happened. She maintained that the burn on Tyler's hand occurred at her home when the child grabbed the cord and pulled the iron down from the ironing board. Elizabeth Maniscalco, a licensed mental health counselor, interviewed Tyler and concluded that his answers had been coached by Evans. Ms. Maniscalco testified that despite the testimony of the physicians, the videotape and the bruises on Tyler, she did not have a problem with Terrell serving as the domiciliary parent.
On November 3, 1994, the trial court issued a ruling, finding that Tyler does not suffer from battered child syndrome. However, the trial court was "concerned" by the testimony of Dr. Gustavson and other experts regarding possible child abuse. The trial court stated that their testimony supported the recommendation of Dr. Bienvenu, who suggested a temporary time sharing plan, which preserved the relationship between the minor child and each parent. In its written reasons for judgment, the court determined that individual counseling was necessary for both parents. However, the final judgment does not order any type of counseling. The trial court's written reasons and its final judgment, signed on November 28, 1994, granted physical custody to Evans during the week and to the maternal grandparents on weekends, with supervised visitation for Terrell at the grandparents' home. The trial court further ordered that this custodial arrangement would be re-evaluated in May or June 1995. Evans appeals the trial court's judgment.

DISCUSSION
The parties disagree about the effect of previous custody proceedings conducted in Caddo Parish on July 6, 1993. Appellee, Terrell, argues that the court made a considered decree of custody that requires the party seeking a change to prove that continuation of the custody arrangement is so deleterious to the child as to justify modification. Evans argues that the prior custody ruling was not a considered decree and that he needed only to prove a change in circumstances to justify modification.
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that any harm likely to be caused by a change in environment is substantially outweighed by the advantages to the child. Barnes v. Cason, 25,808 (La.App. 2d Cir. 5/4/94), 637 So.2d 607, writ denied, 94-1325 (La. 9/2/94), 643 So.2d 149.
A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. By contrast, a judgment with a custody plan that was entered by default, was not contested or was merely entered by the consent of the parties, is not a considered decree. Barnes v. Cason, supra. If a judgment is not a *651 considered decree, the "heavy burden" rule does not apply. In such cases, a party seeking to modify the custody arrangement must prove a change in circumstances and that the new custody arrangement would be in the best interest of the child. Barnes v. Cason, supra.
In this case, joint custody was originally awarded to Evans and Terrell, and she was designated as the domiciliary parent. That judgment was issued on July 6, 1993, in Caddo Parish. The custody order was not contested and Terrell was not present at the hearing. The record does not reflect that the trial court received evidence concerning the fitness of either parent to have custody of the child. Therefore, the original award of joint custody to the parties was not a "considered" decree and the "heavy burden" rule does not apply. In evaluating whether the joint custody order of July 6, 1993 should be modified in this case, the applicable standard requires Evans to prove a change in circumstances materially affecting the welfare of the child and that the modification sought is in the best interest of the child.

Custody
In assignments of error numbered one, two and three, Evans argues that the trial court erred in failing to award him sole custody of the minor child and in awarding shared physical custody to both the father and the maternal grandparents of the child. In response, Terrell contends that the trial court merely established a temporary custodial arrangement pending further evidence concerning Tyler's injuries. She asserts that Evans failed to establish a change in circumstances necessary to justify modification of the original custody order.
In a proceeding for custody of an illegitimate child acknowledged by both parents, custody shall be awarded in accordance with the provisions concerning custody incident to divorce, including LSA-C.C. Arts. 131-136. LSA-C.C. Art. 245. The paramount consideration in a change of custody contest is always the best interest of the child. Barnes v. Cason, supra; LSA-C.C. Art. 131. In determining the best interest of a child, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented. Barnes v. Cason, supra; Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.), writ denied, 620 So.2d 875 (La.1993).
In the present case, Evans produced a videotape and expert testimony indicating that Tyler had suffered physical abuse. Dr. Gustavson testified that the burn mark on the child's hand, the belt mark on his chest and the pattern of bruises on his legs were evidence of inflicted injuries. In its ruling, the trial court expressed concern about the sufficiency of evidence of child abuse and stated that both parents needed individual counseling. The trial court did not make a finding regarding the cause of the injuries and did not find that Tyler was a "battered child," but stated that "there is concern as to the appropriate disciplinary actions that have resulted in some rather extraordinary bruises and marks." While the trial court did not expressly find that Terrell caused the bruises, it nonetheless ordered a custodial arrangement whereby Evans maintained custody of Tyler from Monday through Friday and the grandparents would have "physical custody" on the weekends. Contrary to Evans' assertion in brief, that there is no indication that this plan was a temporary measure, the trial court expressly ordered a reevaluation of the custodial arrangement after approximately six months.
The trial court was faced with evidence that someone had inflicted injuries on the child, and the mother admitted to striking the child with a belt on a previous occasion. The court seems to have attempted to balance its concern for Tyler's safety with its belief that preserving his relationship with both parties was in the child's best interest. Apparently, the trial court crafted this temporary arrangement because it was not prepared to definitively award custody on the basis of the evidence submitted at trial.
The trial court's judgment ordering Evans, and not Terrell, to "maintain custody" of the child effectively granted temporary sole custody to Evans during the interim period, with supervised visitation by Terrell. Although the trial court characterized the non-party *652 maternal grandparents as having "physical custody" of the child, their actual role was to supervise Terrell's visitation with Tyler. A review of the transcript, ruling and judgment indicates that the trial court did not intend to make a definitive custody determination, but sought to establish an interim arrangement providing time for counseling of both parents and for the gathering of further evidence to enable the court to decide whether the child had been abused and by whom. We hereby amend the trial court's judgment to award sole temporary custody to Evans until further proceedings are held. He is directed to advise the trial court of the status of his counseling, which the court deemed necessary in its written ruling. The maternal grandparents did not seek custody and therefore, they are not awarded custody of the child. However, they are designated as supervisors of Terrell's visitation.

Visitation
Assignments of error numbered four, six, seven and eight relate to the trial court's visitation order. Evans argues that the trial court erred in allowing visitation by Terrell, in designating the maternal grandparents to supervise her visits and in not further restricting the visitation to minimize the risk of harm to the child.[1]
A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. Oglesby v. Oglesby, 25,974 (La.App. 2d Cir. 8/17/94) 641 So.2d 1027; LSA-C.C. Art. 136. The trial court has inherent power to determine a child's best interest and to tailor custody orders, including visitation, in a manner that minimizes risk of harm to the child. Oglesby v. Oglesby, supra. Whenever the court finds by a preponderance of evidence that a parent has subjected his or her child to physical abuse, or has permitted such abuse of the child, the court shall prohibit visitation between the abusive parent and the abused child. LSA-R.S. 9:341.
In this case, the trial court ruled that Terrell was entitled to visitation with the child under the supervision of the maternal grandparents. The court seemingly sought to provide a vehicle by which the child could maintain contact with his mother, while taking into account the unexplained marks and bruises on Tyler's body. The trial court did not make a definitive finding that Terrell had subjected her child to physical abuse. Such a finding is required by LSA-R.S. 9:341, before a court prohibits a parent's visitation. The trial court's interim solution was to limit Terrell to weekend visitation and order her to seek counseling. We cannot say the trial court abused its discretion.
In assignment of error number eight, Evans contends that the trial court erred in allowing Terrell's visitation without assessing her all court costs and other incidental fees. Under our law, if the court finds that a parent has a history of family violence, it shall only allow supervised visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. LSA-R.S. 9:364(C). In any family violence case, all court costs, evaluation fees and expert witness fees incurred in furtherance of the statutory scheme set forth in LSA-R.S. 9:361 et seq., shall be paid by the perpetrator of family violence, including the costs of medical and psychological care for the abused child, necessitated by the family violence. LSA-R.S. 9:367. In this case, although the trial court limited Terrell to supervised visitation and ordered counseling, it does not appear from reading the court's judgment that it made a conclusive finding that she physically abused the child or that she had a history of perpetrating family violence. Therefore, the trial court's assessment of costs was not in error.
In assignment of error number five, Evans further argues that the trial court erred in appointing an expert to conduct a custody evaluation who did not have demonstrable training and experience with family violence. The trial court is vested with broad discretion in deciding child custody *653 cases. McKinley v. McKinley, 25,365 (La. App. 2d Cir. 1/19/94), 631 So.2d 45. As stated above, the trial court appointed Dr. Bienvenu to conduct an evaluation of the parents and the child. Dr. Bienvenu testified at trial and was subject to questioning by counsel. Evans did not object to Dr. Bienvenu's qualifications at that time. A party's failure to timely object for the record constitutes a waiver of the objection. Therefore, this assignment of error lacks merit.
The trial court has discretion in tailoring visitation in a manner that minimizes potential risk to the child. Here, the court limited Terrell to supervised visitation during a period from Friday afternoon until Monday morning, in conjunction with parenting and family counseling. After reviewing the record, we cannot say that the trial court abused its discretion in allowing limited supervised visitation by Terrell at the grandparents' home as a temporary measure. However, we amend the duration of that visitation to a period from Friday afternoon until Sunday morning at 9:00 a.m. and retain the monthly overnight visitation during the week. This schedule should give Evans the opportunity to take Tyler to church, while allowing sufficient time for Terrell to interact with her child. Evans remains responsible for transporting the child as set forth in the judgment.
After reviewing the record and trial transcript, we conclude that it is important for the child and the parents that the trial court's contemplated reevaluation take place without unnecessary delay. Therefore, we remand to the trial court and direct that a reevaluation hearing be scheduled and held within 45 days of the date on which the judgment of this court becomes final. At that hearing, the trial court shall make specific findings of fact to determine whether the child has been abused, and if so, by whom. Depending on its finding on that issue, the court should award joint or sole custody of the child in accordance with the law, and particularly with regard to the factors of LSA-C.C. Art. 134. If the court does not award joint custody to the parents, then visitation privileges should be awarded to the noncustodial parent, consistent with LSA-C.C. Art. 136 and the best interest of the child.

CONCLUSION
For the foregoing reasons, we amend the trial court's judgment and award sole temporary custody of the child to Evans and reduce the duration of Terrell's supervised visitation to a period from Friday afternoon until Sunday morning at 9:00 a.m. We affirm the trial court's designation of the maternal grandparents as supervisors of Terrell's visitation, but reverse the grant of physical custody to them. Finally, we remand to the trial court for a reevaluation hearing to be held under the conditions set forth in our opinion. Costs of this appeal are assessed one-half to the appellant, Gary Evans, and one-half to the appellee, Mary Terrell.
AFFIRMED AS AMENDED AND REMANDED WITH INSTRUCTIONS.
APPLICATION FOR REHEARING Before SEXTON, NORRIS, BROWN, WILLIAMS, JJ., and CLARK, J. Pro Tem.
Rehearing denied.
NOTES
[1] Terrell does not appeal, or answer Evans' appeal, challenging custody or the order of supervised visitation. Therefore, we do not address the issue of whether supervised visitation was properly ordered.